1   Robert S. Green (State Bar No. 136183)
    James Robert Noblin (State Bar No. 114442)
2   Evan M. Sumer (State Bar No. 329181)
    **GREEN & NOBLIN, P.C.**
3   2200 Larkspur Landing Circle, Suite 101
    Larkspur, CA 94939
4   Telephone: (415) 477-6700
    Facsimile: (415) 477-6710
5   Email: gnecf@classcounsel.com

6   William B. Federman, admitted *pro hac vice*
    *wbf@federmanlaw.com*
7   Oklahoma Bar No. 2853
    **FEDERMAN & SHERWOOD**
8   10205 N. Pennsylvania Ave.
    Oklahoma City, OK 73120
9   Telephone: (405) 235-1560
    Facsimile: (405) 239-2112
10
11  *Counsel for Plaintiffs and the Proposed Class*

    *Additional Counsel on Signature Page*
12

13                 **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
14                   **SAN FRANCISCO DIVISION**

15

16  BRIGID POLING, *et al.*, individually and on      CASE NO. 3:20-cv-07630-LB
    behalf of all others similarly situated and on
17  behalf of the general public,                     **PLAINTIFFS' NOTICE OF MOTION**
                                                       **AND MOTION FOR PRELIMINARY**
18                 Plaintiffs,                         **APPROVAL OF PROPOSED**
                                                       **SETTLEMENT; MEMORANDUM OF**
19  v.                                                 **POINTS AND AUTHORITIES IN**
                                                       **SUPPORT THEREOF**
20  ARTECH, L.L.C.,
                                                       Date:   September 16, 2021
21                 Defendant.                          Time:   9:30 a.m.
                                                       Judge: Maj. Judge Laurel Beeler
22                                                     Crtrm: Courtroom B – 15th Floor
                                                       Action filed: October 29, 2020
23

24

25

26

27

28

---

Plaintiffs' Motion for Preliminary Approval of Proposed Settlement; Memorandum of Points and Authorities in
Support Thereof – Case No.: 3:20-cv-07630-LB

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ........................................................................................................ 3

     A.    The Cyber Security Event and Procedural History ........................................ 3

     B.    Informal Discovery ........................................................................................ 4

     C.    Settlement Negotiations ................................................................................. 5

III.  TERMS OF THE SETTLEMENT AGREEMENT ..................................................... 5

     A.    Definition of the Settlement Class ................................................................. 5

     B.    Settlement Benefits ........................................................................................ 6

        1.    Monetary Relief ................................................................................. 7

        2.    Injunctive Relief ................................................................................ 8

        3.    Notice to Class and Administrative Costs ........................................ 10

        4.    Appointment of the Settlement Administrator ................................. 11

        5.    Proposed Class Representative Service Awards ................................ 11

        6.    Attorneys' Fees, Costs, Expenses .................................................... 12

        7.    Release ............................................................................................. 13

IV.   PRELIMINARY APPROVAL IS APPROPRIATE .................................................. 13

     A.    Legal Standards ............................................................................................ 13

     B.    The Proposed Settlement Class Meets Rule 23 ............................................. 14

        1.    Rule 23 Class Certification Factors Are Met ................................... 14

     C.    Preliminary Approval is Appropriate ........................................................... 17

        1.    The Strength of Plaintiffs' Case; Risk, Expense, Complexity, and
            Duration of Ongoing Litigation ....................................................... 17

        2.    The Risk of Maintaining Class Action Status Throughout the Trial ........ 18

        3.    The Benefits Offered by the Settlement ........................................... 18

        4.    Discovery Completed and the Stage of the Proceedings .................. 20

        5.    The Experience and Views of Counsel ............................................ 21

        6.    Government Participant Not Present in Litigation ........................... 21

        7.    The Reaction of the Class Members to the Proposed Settlement ...... 21

     D.    The Settlement was the Product of Arm's-Length Negotiations ................... 21

i

E.     The Proposed Notice is Appropriate ......................................................22

F.     The Claim Process is Simple and Not Cumbersome..............................22

    1.     The Court Should Approve Settlement Administration Deadlines and Schedule a Fairness Hearing ...................................................23

V.  CONCLUSION ..............................................................................................24

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*
　521 U.S. 591 (1997) ............................................................................. 12, 15

*Armstrong v. Davis*
　275 F.3d 849 (9th Cir. 2001) ..................................................................... 13

*Bellinghausen v. Tractor Supply Co.*
　306 F.R.D. 245 (N.D. Cal. 2015) ............................................................... 10

*Chambers v. Whirlpool Corp.*
　980 F.3d 645 (9th Cir. 2020) ..................................................................... 20

*Ching v. Siemens Indus., Inc.*
　2013 WL 6200190 ..................................................................................... 19

*Class Plaintiffs v. City of Seattle*
　955 F.2d 1268 (9th Cir. 1992) ................................................................... 12

*Consolidated Rail Corp. v. Town of Hyde Park*
　47 F.3d 473 (2d Cir. 1995) ........................................................................ 12

*Hanlon v. Chrysler Corp.*
　150 F.3d 1011 (9th Cir. 1998) ................................................................... 14

*In re Bluetooth Headset Prod. Liabl Litig.*
　645 F.3d 935 (9th Cir. 2011) ..................................................................... 20

*In re Linkedin User Privacy Litig.*
　309 F.R.D. 573 (N.D. Cal. 2015) ............................................................... 10

*In re Nat'l Football League Players Concussion Injury Litig.*
　821 F.3d 410 (3d. Cir.) .............................................................................. 10

*In re Tableware Antitrust Litig.*
　484 F. Supp. 2d 1078 .................................................................................. 19

*Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*
　244 F.3d 1152 (9th Cir. 2001) ................................................................... 15

*Moshogiannis v. Sec. Consultants Grp., Inc.*
　2012 WL 423860 (N.D. Cal. Feb. 8, 2012) ............................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*
　339 U.S. 306 (1950) ................................................................................... 20

*Roe v. Frito-Lay, Inc.*
　2016 WL 4154850 (N.D. Cal. Aug. 5, 2016) ............................................ 16

*Rosado v. Ebay Inc.*
　2016 WL 3401987 (N.D. Cal. June 21, 2016) .......................................... 10

iii

*Schaffer v. Litton Loan Serv., LP.*
  2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ........................................................ 16

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ........................................................................... 12, 13

*Tijero v. Aaron Bros., Inc.*
  2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) ........................................................ 19

*Vaquero v. Ashley Furniture Indus., Inc.*
  824 F.3d 1150 (9th Cir. 2016) ............................................................................... 14

*Wortman v. Air New Zealand*
  326 F.R.D. 549 (N.D. Cal. 2018) .......................................................................... 15

*Zinser v. Accufix Research Institute, Inc.*
  253 F.3d 1180 (9th Cir. 2001) ............................................................................... 15

**Statutes**
28 U.S.C. § 1715 ..................................................................................................... 20
Cal. Civ. Code §1798.100 ....................................................................................... 17

**Rules**
Fed. R. Civ. P. 23(b)(3)(A)–(D) ............................................................................ 15
Fed. R. Civ. Proc. 23(b)(3) ................................................................................ 3, 14
Federal Rule of Civil Procedure 23(a) ................................................................... 14
Federal Rule of Civil Procedure 23(a)(1) .............................................................. 12
Federal Rule of Civil Procedure 23(e) ..................................................................... 2
Federal Rule of Civil Procedure 23(e)(1) .............................................................. 20
Federal Rule of Civil Procedure 23(e)(2)(B) ......................................................... 20
Rule 23 of the Federal Rules of Civil Procedure ............................................ Passim
Rule 23(a) and (b) .................................................................................................. 12
Rule 23(a) and (b)(3) ............................................................................................... 3
Rule 23(a)(2) .......................................................................................................... 12
Rule 23(a)(3) .......................................................................................................... 13
Rule 23(a)(4) .......................................................................................................... 13
Rule 23(b) .............................................................................................................. 14
Rule 23(b)(3)(D) .................................................................................................... 15
Rule 23(c)(2) .......................................................................................................... 20
Rule 23(h) .............................................................................................................. 11

iv

# NOTICE OF MOTION

## TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on September 16, 2021 at 9:30 am, in Courtroom B, 15th Floor, of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or at such other time as may be set by the Court, the Honorable Magistrate Judge Laurel Beeler, presiding, Plaintiffs Brigid Poling and Dwight Jenkins will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) preliminarily approving the proposed Settlement[1]; (ii) certifying a class for settlement purposes; (iii) approving the form and manner of notice to the settlement class; (iv) approving the selection of the Settlement Administrator; and (iv) scheduling a Final Approval Hearing before the Court.

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs seek this Court to grant preliminary approval of the class action settlement reached by Plaintiffs and Defendant Artech, L.L.C. Defendant does not object to the relief sought by Plaintiffs.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of William B. Federman and the exhibit attached thereto, the Settlement Agreement Release, oral argument of counsel, all documents in the record, the Northern District of California's Procedural Guidance for Class Action Settlements, and any other matter that may be submitted at the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement is within the range of fairness, reasonableness, and
   adequacy as to warrant: (a) the Court's preliminary approval; (b) certification of a
   Settlement Class for settlement purposes; (c) the dissemination of Notice of its term to
   Settlement Class Members; and (d) setting a hearing date for final approval of the

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement and Release ("Settlement Agreement" or "Agreement"), attached hereto **Exhibit 1**.

Settlement as well as application of attorneys' fees, service awards, and reimbursement of expenses;

2. Whether the proposed class meets the requirements for certifications under Rule 23(a) and (b)(3);

3. Whether Plaintiffs should be appointed as class representatives and their counsel as class counsel;

4. Whether the proposed Notice adequately apprises the Settlement Class Members of the terms of the Settlement and their rights with respect to it; and

Whether the selection of KCC Class Action Services, LLC as Settlement Administrator should be approved.

Plaintiffs' Motion for Preliminary Approval of Proposed Settlement; Memorandum of Points and Authorities in Support Thereof – Case No.: 3:20-cv-07630-LB

1

## I.     INTRODUCTION

2       Plaintiffs and proposed Class Representatives Brigid Poling and Dwight Jenkins

3   (collectively "Plaintiffs" or "Class Representatives"), individually and on behalf of a putative

4   class of approximately thirty thousand (30,000) individuals whose Personal Information may

5   have been accessible when unknown third-party criminal actors gained unauthorized access to

6   an Artech, L.L.C. ("Defendant" or "Artech") server (the "Cyber Security Event"), have reached

7   an agreement with Artech to settle all claims in this litigation. The proposed Settlement

8   Agreement ("Settlement Agreement" or "Settlement") provides injunctive relief designed to

9   enhance Artech's cyber security in particular as it relates to the "Settlement Class" (defined

10   below) members' personally identifiable information ("PII"), and includes, without limitation,

11   stipulations to reauthorize sufficient funds in its IT budget through 2024 to conduct baseline

12   penetration testing through a well-established third-party IT security vendor, implementation of

13   a company-wide encryption protocol whereby all PII (defined below) is segregated and

14   encrypted daily, and deployment of Security Information and Event Management ("SIEM")

15   software on or before December 31, 2022. In addition, the Settlement[2] provides monetary relief

16   that will be used to reimburse members of the Class for out-of-pocket losses, time spent related

17   to the Cyber Security Event, and the option to enroll in an identity theft protection program.

18   Defendant does not object to the relief sought by Plaintiffs herein and does not oppose this

19   Motion.

## II.    BACKGROUND

20

21       ### A.     The Cyber Security Event and Procedural History

22       Defendant Artech is a workforce solutions company providing managed services,

23   contingent labor, staff augmentation, IT consulting, project outsourcing, and statement of work

24   services across multiple industries, including systems integration, banking and finance,

25   telecommunications, pharmaceutical and life sciences, energy, healthcare, technology,

26

27   _____

28   [2] All capitalized terms not otherwise defined herein shall have the same meanings as
set forth in the Settlement Agreement and Release ("Settlement Agreement" or
"Agreement"), attached hereto **Exhibit 1**.

3

transportation, and local and federal government agencies. *See* First Amended Class Action Complaint, (Doc. No. 31, ¶1) (the "FAC").

On or about September 4, 2020, Defendant began notifying individuals, including Plaintiffs and other Class members, that on January 8, 2020, Defendant received a report of unusual activity relating to an employee's Artech user account. A subsequent investigation determined that an unauthorized cybercriminal gained access to certain of Defendant's computer systems between January 5, 2020 and January 8, 2020 (the "Cyber Security Event"). *Id*. ¶ 2. The PII potentially accessible during the Cyber Security Event included names, Social Security numbers, medical information, health insurance information, financial information, payment card information, driver's license/state identification numbers, government issued identification numbers, passport numbers, visa numbers, electronic/digital signatures, usernames and password information. *Id*. ¶ 3.

The original class action complaint was filed on October 29, 2020. On July 16, 2021, Plaintiffs filed the FAC. Plaintiffs' counsel, William B. Federman of Federman & Sherwood requests appointment as counsel for the Settlement Class ("Class Counsel"). *See* Declaration of William B. Federman in Support of Plaintiffs' Notice of Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement ("Federman Dec."), ¶3, attached as **Exhibit 2** hereto. In addition, Robert Green, of Green & Noblin, P.C. who has contributed time and effort to this matter on behalf of the Plaintiffs and the Class, will continue as local counsel to Plaintiffs.

## B.  Informal Discovery

Plaintiffs and Defendant (collectively, the "Parties") engaged in informal discovery leading up to the mediation and Settlement. The Parties had ongoing written and oral communications to address the information and exchanged documents critical for a meaningful mediation, which Artech provided.  *Id.* ¶6. Plaintiffs engaged cyber security experts who were involved in drafting and submitting to Artech informal requests for information and production of documents. *Id.* ¶7. The individual Plaintiffs worked diligently with their counsel to provide

documents and information necessary to aid the Class in furtherance of settlement negotiations. *Id.* ¶8.

The Parties held a global meeting before the mediation, which included both Parties' experts, to engage in a discussion regarding the Cyber Security Event and to assess and opine on the impact of the Cyber Security Event on both the Class Members and Artech. This meeting proved useful in informing Class Counsel on settlement discussions. *Id.* ¶6.

### C. Settlement Negotiations

In anticipation of the scheduled mediation date of June 28, 2021, Plaintiffs sent a detailed demand letter to Artech, setting forth a proposed settlement structure to guide negotiations. *Id.* ¶11. On June 28, 2021, after a full day of mediation with Judge Edward A. Infante (Ret.) and arm's length negotiations, the Parties agreed to most of the settlement terms. *Id.* ¶12. Arm's-length negotiations continued over the following days to address the remaining issues until an agreement was reached on all issues that comprise the Settlement Agreement. *Id.*

## III. TERMS OF THE SETTLEMENT AGREEMENT

### A. Definition of the Settlement Class

The parties contemplate certification for settlement purposes only pursuant to Fed. R. Civ. Proc. 23(b)(3), with a right of opt-out[3], of the putative Settlement Class. All named Plaintiffs seek to represent the Settlement Class.

**Settlement Class:**

All persons in the United States and Overseas Military identified on the "Settlement Class List," as defined in the Settlement Agreement, including all individuals who were sent notification by Artech that their Personal Information may have been accessible during the Cyber Security Event.

The Settlement Class specifically excludes Artech's: (i) trustees, administrators, and attorneys; (ii) all Settlement Class Members who timely and validly request exclusion from and

---

[3] Both the Settlement Agreement and Notice contain full instructions on how to opt-out of the Settlement as well as Object to the Settlement. Guidance, Items 4 and 5.

opt-out of the Settlement Class; (iii) the Magistrate Judge to whom the action is assigned and any member of the Magistrate Judge's staff or immediate family members; (iv) any members or employees of defense counsel; and (v) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Cyber Security Event or who pleads *nolo contendere* to any such charge. Settlement Agreement, Ex. 1, ¶31.

The Settlement Class is comprised of 30,720 individuals.

Here, the litigation class has not been certified. The differences between the Settlement Class and the classes proposed in the First Amended Class Action Complaint (ECF Doc. No. 31) (the "FAC") are minimal (*See, e.g., Procedural Guidance for Class Action Settlements for the Northern District of California* (hereinafter the "Guidance"), Item (1)(a)). Indeed, Plaintiffs proposed three classes: a nationwide class, a California Sub-Class, and a North Carolina Sub-Class of those persons in the United States whose PII was compromised as a result of the Artech Cyber Security Event announced by Artech on or around September 4, 2020. FAC, ¶88. The Settlement Class, as agreed to by the Parties, includes an even broader swath of people, because it includes those who may be living overseas and also includes everyone who received notification of the Cyber Security Event, not simply those whose PII was potentially accessible during the Cyber Security Event. Plaintiffs' proposed subclasses are also included in the Settlement Class. The Settlement Class is appropriate for the instant case and is designed to reach as many individuals as possible.

**B.     Settlement Benefits[4]**

The settlement provides for monetary, injunctive, and other relief.

_____

[4] Because some Settlement Class members may be currently employed by Artech, and to encourage Settlement Class members to participate in the settlement, Artech will not be provided the identities of Settlement Class members who participate in the settlement.

6

### 1.   Monetary Relief

#### a.   Cash Payment for Reimbursement of Out-of-Pocket Losses

Settlement Class members may submit a claim for up to a maximum of $10,000.00 for reimbursement of out-of-pocket expenses or losses. *Id.*, Ex. 1, ¶¶ 40, 50. "Out-of-Pocket" expenses or losses are unreimbursed costs or expenditures incurred by a Class member that are fairly traceable to the Cyber Security Event. These may include, but are not limited to: costs associated with credit monitoring or identity theft insurance purchased directly by the claimant, provided that the product was purchased primarily as a result of the Cyber Security Event; costs associated with requesting a credit report, provided that the claimant requested the report primarily as a result of the Cyber Security Event; costs associated with a credit freeze, provided that the claimant requested the freeze primarily as a result of the Cyber Security Event; costs associated with cancelling a payment card and/or obtaining a replacement payment card, provided that the claimant's request for the cancellation and/or replacement was primarily the result of the Cyber Security Event; costs associated with closing a bank account and/or opening a new bank account, provided that the claimant's request to close and/or open a bank account was primarily the result of the Cyber Security Event; postage, long-distance phone charges, express mail and other incidental expenses, provided that the claimant provides documentation of the charges and an explanation of their relationship to the Cyber Security Event; overdraft and/or overdraft protection fees, provided that the fees were incurred as a result of the Cyber Security Event; late and/or missed payment fees and/or charges, provided that the fees and/or charges were incurred as a result of the Cyber Security Event; the increase in interest on credit cards or other loans caused by a late or missed payment that was a result of the Cyber Security Event; and damage to credit and costs associated with a decreased credit score if fairly traceable to result of the Cyber Security Event. *Id.*, Ex. 1, ¶22.   The submitted evidence must show: (a) the loss is an actual, documented, and unreimbursed monetary loss as shown by (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone.

Third-party documentation can include receipts or other documentation not "self-prepared" by the Participating Settlement Class Member that documents the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation; (b) the loss was more-likely-than-not caused by identity theft or other fraud or misuse of the Personal Information fairly traceable to the Cyber Security Event; (c) the loss occurred after January 5, 2020; and (d) the Settlement Class member made reasonable efforts to avoid or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.*, Ex. 1, ¶40.

A stellar feature of the Settlement is there will be no aggregate cap on the amounts paid to Settlement Class members. Federman Dec., ¶¶18, 19.  A claim for reimbursement of any such losses must be accompanied by information required by the Settlement Administrator to evaluate the claim. Ex. 1, ¶¶39, 40. Further, because there is no aggregate cap, there is **no** possibility of reversion. Guidance, Item (1)(h).

### b. Cash Payment for Reimbursement of Time

Settlement Class members may submit a claim for reimbursement of up to three (3) hours, at $26.67 per hour, for time spent remedying issues related to the Cyber Security Event, provided that the Settlement Class member provides documentation or a narrative explanation plausibly establishing that the time was spent dealing with issues related to the Cyber Security Event. Ex. 1, ¶¶39, 40.

### c. Three Years of Credit Monitoring and Identity Theft Protection Program

All Participating Settlement Class Members shall have until three (3) months following the Final Approval Hearing to request access or extension of their access to credit monitoring and identity protection services through Kroll paid for by Defendant for a period of three (3) years after their actual enrollment or the Claims Deadline, whichever is later. *Id.*, Ex. 1, ¶38.

### 2. Injunctive Relief

Artech, having engaged a third-party cybersecurity consultant, has agreed to continue,

8

adopt and/or implement certain business practices and remedial measures ("Business Practice Commitments") for a period of at least three years following the Effective Date of the Settlement, including the following with regard to the PII of former and current employees and job applicants:

a.  Artech has conducted baseline penetration testing through a well-established third-party IT security vendor, and will continue to conduct substantially-equivalent penetration testing at least annually. Defendant has included sufficient funds in its IT security budget to accomplish annual penetration testing as outlined in this subparagraph for 2021, and will reauthorize sufficient funds in its IT budget for each subsequent year through 2024 to utilize the same or any comparably-priced improved testing technology as may be available.

b.  Artech shall continue to ensure that anti-malware software resides on all its servers, and that its VPN appliance is updated as soon as practicable after security updates become available, but in no instance less often than monthly.

c.  Artech is implementing a company-wide encryption protocol wherein all Personal Information is segregated by its employees and encrypted daily.

d.  Artech is testing its IT security for NIST compliance, and has achieved compliance with many NIST requirements, with the remainder to be addressed through SIEM software. Defendant will provide a declaration or certification of such compliance on or before December 21, 2022.

e.  Artech is currently evaluating several Security Information and Event Management ("SIEM") software options, and shall deploy SIEM software on or before December 31, 2022.

f.  Artech currently provides IT security and Personal Information training to all of its personnel during onboarding, and on a quarterly basis thereafter, which will continue. This training includes directions about how to handle suspicious communications and

9

documents and encourages personnel to report any concerns about Artech's information security systems.

g.  Artech has developed and implemented a formal written Personal Information policy, which it will continue to maintain with appropriate updates.

h.  Artech is developing a suite of testing and auditing tools through a third-party vendor designed to locate Personal Information located outside Artech's encrypted environment, which will be implemented on or before December 31, 2021.  Artech shall provide to the Court a certification from its third-party vendor that all Personal Information located during the auditing process has been either destroyed or moved to Artech's encrypted environment.

i.  Artech shall continue to provide employees and former employees a means requesting their Social Security numbers and dates of birth be deleted after such information is no longer needed to fulfill Artech's corporate mission, and will delete such information upon request.

*Id.*, Ex. 1, ¶51.

### 3.  Notice to Class and Administrative Costs

Payment of all costs associated with providing Notice and administration of the settlement will be paid by Artech. *Id.*, Ex. 1, ¶76. Guidance, Item 10. The Parties have agreed upon a Settlement Administrator to provide the Notice and administration of this settlement, following a review of four proposals for this case. Federman Dec., ¶36. A copy of the proposed Notice is attached hereto as **Exhibit 3**. The Settlement Administrator will provide notice to the Settlement Class pursuant to Fed. R. Civ. P. 23, among other duties. Ex. 1, ¶57, Federman Dec., ¶38. Notice, and a reminder as requested by Class Counsel, will be provided directly through U.S. Mail and/or email. *Id.*

### 4.      Appointment of the Settlement Administrator

Defendant used best efforts to identify and negotiate with a settlement claims administrator who proposed a reasonable and efficient notice and claims administration process. Federman Dec., ¶35. The different settlement administrators proposed providing notice through both U.S. Mail and email. Guidance, Item 2.

The Parties propose KCC Class Action Services, LLC ("KCC") as Settlement Administrator[5], which provided the estimate with the lowest cost. Ex. 1, ¶30. KCC is an experienced and reputable national class action administrator. Federman Dec., ¶37. KCC will provide notice, administer and make determinations regarding claim forms; process settlement payments; make distributions; and other services necessary to implement the Settlement as set forth in the Settlement Agreement. Ex. 1, ¶57.  KCC's fees and costs will be paid by Artech, and based on current assumptions are estimated to be between $50,516.00 and $54,119.00, depending on the claims rate and the manner by which claims are filed. Federman Dec., ¶42. Given the overall value of the settlement and the size of the Settlement Class, these administrative costs are appropriate and reasonable.

### 5.      Proposed Class Representative Service Awards

The Parties agreed upon the amount of a reasonable service award to be paid to the named Plaintiffs after they reached an agreement on the terms of the settlement. Federman Dec., ¶23.   Artech will not oppose service awards of $2,500.00 to the two named Plaintiffs. *Id.* The service awards sought by Class Counsel are within the typical range. "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). Courts in the Northern District of California have found that a $5,000 incentive award is presumptively reasonable. *See*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015); *Rosado v. Eay Inc.*, No. 5:12-cv-04005-EJD, 2016

---

[5] Artech's counsel's firm has never used KCC as a settlement administrator. Conversely, Class Counsel has retained KCC twice in the last two years: *Cochran, et al. v.  Burgerville LLC*, Multnomah County Circuit Court, Oregon, Case No 18-cv-44864, and *Tilleman v. LeafFilter North, LLC, et al.*, W.D. Tex., Case No. 5:18-cv-1152-DAE. Guidance, Item 2.

11

WL 3401987, at *9 (N.D. Cal. June 21, 2016). And, because the Settlement is not conditioned on the Court's approval of the full (or any) amount of a service award, the Settlement does not grant preferential treatment to Plaintiffs. Ex. 1, ¶73. Guidance, Item 7.

The Plaintiffs have been active Class Representatives. They investigated their claims both prior to and after retaining counsel; participated in numerous conversations with counsel, answering many questions about themselves, their experiences at Artech and as a result of the Cyber Security Event; reviewed the multiple complaints; provided documents responsive to informal discovery prior to mediation; and maintained regular communications with counsel to monitor the progress of the litigation including during the mediation. *Id.*, ¶24. They also conferred with counsel regarding the terms of the Settlement Agreement. *Id.* The proposed $2,500.00 service award is consistent with or below those approved in other data breach class action settlements. *Id.*, ¶23.

### 6.   Attorneys' Fees, Costs, Expenses

The Parties addressed reasonable attorneys' fee, costs, and expenses for proposed Class Counsel only after they reached an agreement on the material terms of the settlement on behalf of the Class. Federman Dec., ¶¶15, 22; *see In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d 410, 445 (3d. Cir.), *as amended* (May 2, 2016) (noting that deferring discussion of fees until after material settlement terms are agreed upon is a practice routinely approved by courts). After the negotiation and following a mediator's proposal submitted by Judge Infante, Artech agreed not to oppose Class Counsel's request for attorneys' fees and expenses of $350,000.00. *Id.*, ¶23, Ex. 1, ¶74. Class Counsel is seeking far less than 25% of the total *potential* value of the settlement, which is well over $300 million.[6] Indeed, 25% of $2.4 million (the total amount if the entire Class claims $80.00 in time spent) is $600,000.00.[7] Class Counsel seeks far less than $600,000.00. Further, Class Counsel bases his fee request on the

---

[6] This figure is based upon if 30,000 Settlement Class Members are all compensated for $10,000.00 for out-of-pocket losses attributed to the Cyber Security Incident. Ex. 1, ¶40.
[7] Given low claims rates, the Settlement may total approximately $2 million. 25% of $2 million is $500,000, and Class Counsel seeks far less.

injunctive relief and other non-monetary relief obtained for the Class, which is explained in more detail *supra*.[8] Given typical claims rates of class action cases, discussed more *infra*, one may reasonably assume this action may have a claims rate of 4%. 4% of the Settlement Class is approximately 1,229 individuals. If 1,299 individuals claim $285 (potentially $80 (the maximum for time lost) and $205 in out-of-pocket losses), that is approximately Class Counsel's request for attorneys' fees. Guidance, Item 6.

Class Counsel will file a motion for payment of attorneys' fees and reimbursement of expenses prior to the Final Approval Hearing. As will be briefed in more detail in those papers, the fee sought is reasonable and fair. Federman Dec., ¶23. Settlement Class members will have the opportunity to comment on or object to the fee petition under Rule 23(h).  Ex. 1, ¶¶20, 56.

### 7.  Release

Upon the Effective Date, and in consideration of the Settlement benefits described in the Settlement Agreement, each of the Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have released, acquitted, and forever discharged any and all Released Claims against Artech. Ex. 1, ¶68.

The Released Claims, as defined in the Settlement Agreement, encompass the claims pled by Plaintiffs in their FAC. The Released Claims include any claims related to the same nucleus of operative facts as any claims alleged in the instant case. Ex. 1, ¶26. Guidance, Item 1(c).

## IV.   PRELIMINARY APPROVAL IS APPROPRIATE

### A.   Legal Standards

The Ninth Circuit favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). When parties settle before class certification, "courts must

---

[8] The cost of the identity theft protection offered by Artech is approximately $15.00 per year if 1,500 individuals enrolled.

1    peruse the proposed compromise to ratify both the propriety of the certification and the fairness

2    of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

3        Federal Rule of Civil Procedure 23 must be met for a class to be certified for settlement

4    purposes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23 certification

5    factors should be given "undiluted, even heightened, attention in the settlement context." *Id.* at

6    621.

7    **B.    The Proposed Settlement Class Meets Rule 23**

8        **1.    Rule 23 Class Certification Factors Are Met**

9            Both Rule 23(a) and (b) are met as set forth below.

10            **a.    The Class is Sufficiently Numerous**

11       Federal Rule of Civil Procedure 23(a)(1) numerosity is satisfied where the number of

12   proposed class members is so numerous that joinder of all members is impracticable.

13   Numerosity is presumed where the plaintiff class contains forty or more members. *Consolidated*

14   *Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are

15   approximately 30,720 members of the Settlement Class, making joinder impractical, and

16   satisfying the Rule 23 numerosity requirement.

17           **b.    The Commonality Requirement Is Met**

18       Rule 23(a)(2) requires that the representative plaintiffs' claims contain "questions of law

19   or fact common to the class." Fed. R. Civ. P. 23(a)(2). Generally, "a few factual variations

20   among the class grievances will not defeat commonality so long as class members' claims arise

21   from "shared legal issues" or "a common core of salient facts." *Staton v. Boeing Co.*, 327 F.3d

22   938, 953 (9th Cir. 2003).

23       Here, the claims of Plaintiffs and members of the Class all stem from the same Cyber

24   Security Event. The common issues presented in this litigation include whether Artech failed to

25   implement and maintain reasonable and adequate data security practices to safeguard the PII of

26   Plaintiffs and the Class, the Cyber Security Event itself, whether Artech owed and breached any

27   duty to Plaintiffs and the Class to keep their PII secure, and the types of damage caused by the

28

---

14

Cyber Security Event.

### c.    The Typicality Requirement is Met

Rule 23(a)(3) requires that the representative plaintiffs' claims and defenses are typical of those of the proposed class. Fed. R. Civ. P. 23(a)(3).  The representative plaintiffs' and proposed class members' injuries do not have to be identical, but it is required that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct."  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Here, the claims of Plaintiffs and those of the proposed Class arise from the same facts and circumstances surrounding the Cyber Security Event, and the same or similar legal theories, and thus, the typicality requirement is met.

### d.    The Adequacy Requirement is Met

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement rests on two questions: whether the class representatives and their counsel (1) have any conflicts of interest with the proposed class members; and (2) will prosecute the action vigorously on behalf of the class. *See Staton,* 327 F.3d at 957.

The adequacy requirement is satisfied here. Neither the proposed Class Representatives nor proposed Class Counsel have any conflicts with the absent Class members, as their claims are coextensive. Federman Dec., ¶29.  With regard to the second factor, the proposed Class Counsel is a highly qualified and experienced class action attorney, especially in the area of data breaches, consumer protection and complex litigation. *Id.*, ¶4. Finally, the proposed Class Representatives have been regularly involved in the litigation to-date, have provided information critical in negotiating the Settlement, have been in regular communication and will continue to be through the completion of the claims administration process. *Id.*, ¶24.

### i.    The Settlement Class Satisfies the Predominance Test Under Rule 23(b)(3)

In order to satisfy Federal Rule of Civil Procedure 23(a), at least one prong of Rule 23(b) must also be met. This is the predominance inquiry test which asks whether proposed classes are

15

1  sufficiently cohesive to warrant adjudication by representation and whether there is clear

2  justification for handling the dispute on a representative rather than an individual basis. *Hanlon*

3  *v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Further, Rule 23(b) requires that a class

4

5  action is superior to other available methods for fairly and efficiently adjudicating the

6  controversy. Fed. R. Civ. P. 23(b)(3).

7        When analyzing predominance, the Court looks at the common issues underlying the

8  plaintiffs' individual claims. Here, the legal issues faced by members of the Class arise from the

9  same set of facts surrounding the Cyber Security Event and thus mirror claims alleged by

10  Plaintiffs. The facts and issues that support the commonality requirement discussed above

11  overlap here as well. The commonalities such as the issues of duty and breach are one and the

12  same between Plaintiffs and members of the Class. Resolution of Plaintiffs' claims would result

13  in resolution of the issues of the Class. While damages may vary between Plaintiffs and

14  individuals of the Class, because their damages all stem from Artech's actions that created the

15  legal liability, Plaintiffs have met the predominance test. *See Vaquero v. Ashley Furniture*

16  *Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (where the plaintiffs' damages stemming from

17  defendant's actions creating legal liability was sufficient evidence to meet predominance

18  requirement).

19        Plaintiffs are also able to show that class settlement is superior to other methods of

20  litigation. To determine whether a class action is a superior method for resolving the litigation

21  four factors are considered: "(1) the class members' interest in individually controlling the

22  prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning

23  the controversy already begun by or against class members, (3) the desirability or undesirability

24  of concentrating the litigation and of the claims in the particular forum, and (4) the likely

25  difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D); *Wortman v. Air New*

26  *Zealand*, 326 F.R.D. 549, 561 (N.D. Cal. 2018) (citing *Zinser v. Accufix Research Institute, Inc.*,

27  253 F.3d 1180, 1190 (9th Cir. 2001).

28

1        The following facts support class action litigation here: (1) at present there are

2  approximately 30,720 individuals in the Settlement Class, all of whom were impacted by the

3  Cyber Security Event, (2) Settlement Class members and Plaintiffs have similar, if not the same,

4  legal claims stemming from the Cyber Security Event, (3) the Parties are unaware of litigation

5  related to this case going on in any other forum, and (4) this particular forum is appropriate and

6  convenient for Plaintiffs' claims to be litigated. Additionally, individual litigation of each Class

7  member's claims would be less efficient, not cost effective, and there are no other realistic

8  alternatives. *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,

9  244 F.3d 1152, 1163 (9th Cir. 2001). And, since settlement-only certification is requested, Rule

10  23(b)(3)(D) does not require an analysis of manageability.  *Amchem*, 521 U.S. at 620.

### C.   Preliminary Approval is Appropriate

#### 1.   The Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Duration of Ongoing Litigation

Plaintiffs are confident they will be able to prove that Artech's inadequate security was

the cause of the Cyber Security Event and that their information may be for sale on the dark web

as a result. However, Artech strongly disputes both of those allegations. Expert analysis will

continue to be extensive and expensive. Moreover, in addition to costs and expenses, there are

inherent risks associated with taking any data breach class action to trial, including pre-trial

risks on class certification and summary judgment.  Not to mention, data breaches often result in

injuries, such as the risk of future identity theft and loss of control of the plaintiffs' PII, which

are the subject of intense controversy and thus, addressing the nature and cause of Plaintiffs'

past damage, and the projection of Plaintiffs' current and future damage due to the Cyber

Security Event will be strongly challenged. Federman Dec., ¶¶26, 31.

Regardless of how strong Plaintiffs' liability and damage claims are, they face a

number of obstacles, such as obtaining class certification and defeating summary judgment. In

addition, Artech has threatened to file a motion to dismiss and a motion to compel arbitration.

Plaintiffs believe they would prevail on both motions, but they recognize the risk and

consequences of adverse rulings.

17

Reaching a settlement now allows for Settlement Class members to obtain benefits in the near future, as opposed to potentially waiting years. Settlement also eliminates the possibility of receiving no benefit, particularly the extended identity protection program. Resolution in the near-term also takes into consideration the harm that Settlement Class members have suffered and will likely be mitigated by having access to the full panoply of the identity theft protection benefits in the near-term, rather than after prolonged litigation. Providing access to the proposed settlement benefits in the near term will assist the Class with issues arising out of the Cyber Security Event, such as those already suffered by Plaintiffs. Thus, preliminary approval of the Settlement is strongly favored. Indeed, "[e]stimates of a fair settlement figure are tempered by factors such as losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Schaffer v. Litton Loan Serv., LP.,* No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012). *See also*, *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751-HSG, 2016 WL 4154850, at *7 (N.D. Cal. Aug. 5, 2016) (noting that "the risks and costs associated with class litigation weigh strongly in favor of settlement" where "Plaintiff would [have been] required to successfully move for class certification under Rule 23, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.").

### 2.    The Risk of Maintaining Class Action Status Throughout the Trial

Obtaining and maintaining class certification is another unknown. If class certification is obtained, Artech would likely appeal, causing further delay and raising litigation expenses. Separately, Artech could also file a motion for summary judgment, raising the specter of additional appeals after any summary judgment rulings. Because of these risks, the Settlement is beneficial to the Class, mitigating risk and delays.

### 3.    The Benefits Offered by the Settlement

The Settlement offers monetary and non-monetary benefits and is an excellent result for the Class. Federman Dec., ¶¶17, 18, 19. Settlement Class members will be compensated for their out-of-pocket losses, time spent addressing issues relating to the Cyber Security Event, and

Plaintiffs' Motion for Preliminary Approval of Proposed Settlement; Memorandum of Points and Authorities in Support Thereof – Case No.: 3:20-cv-07630-LB

1  have an option to enroll in three years of identity theft protection. *Id.*

2  The Guidance also requires an analysis of the anticipated class recovery under the

3  Settlement and the potential class recovery if Plaintiffs fully prevailed on their claims, and an

4  explanation as to those differences. Guidance, Item (1)(e). Here, the total *potential* value of the

5  settlement totals well over $300 million. However, given the typical claims rate in class actions

6  (anywhere from 2-5%), the total amount expended by Defendant will, most likely, be much less

7  than that. Because the Parties were able to reach a Settlement prior to seeking class certification,

8  Plaintiffs did not retain a damages expert.

9  However, Plaintiffs brought several statutory claims pursuant to California law that shed

10  some light on what they may have recovered. Plaintiffs brought a claim pursuant to the California

11  Consumer Privacy Act (the "CCPA"), Cal. Civ. Code §1798.100, *et seq*. (*See,* FAC, ¶¶210-214)

12  on behalf of the Nationwide Class or alternatively, the California Subclass, of which Plaintiff

13  Poling is a member. The CCPA provides for statutory damages between $100 and $750 per

14  consumer per incident. Here, assuming Plaintiffs were successful on this claim, if all 30,720

15  Settlement Class Members were granted $100.00 under the statute, the total payout would equal

16  $3,072,000.00. This is a smaller figure than the total potential value of the Settlement. However,

17  given Defendant's vigorous defenses, as explained *supra*, it is unknown if Plaintiffs could have

18  succeeded on their CCPA claims. Indeed, there is a real and substantial risk that Plaintiffs would

19  not be able to obtain any recovery at all. Because class certification had not been briefed, and no

20  dispositive motions have been made, there is the possibility that the Court may ultimately

21  determine that either class certification is unwarranted or find for Defendant at summary

22  judgment. Indeed, even if Plaintiffs were able to obtain class certification for trial and could

23  successfully oppose any motion for summary judgment, and even if Plaintiffs could have

24  successfully proven liability at trial, Plaintiffs could still recover nothing because the fact and

25  amount of damages that could be recovered in this case are still uncertain. With documentation

26  of unreimbursed expenses or other out-of-pocket losses fairly traceable to the Cyber Security

27  Event, each Settlement Class Member may claim up to $10,000.00. There is no aggregate cap on

28

Plaintiffs' Motion for Preliminary Approval of Proposed Settlement; Memorandum of Points and Authorities in Support Thereof – Case No.: 3:20-cv-07630-LB

the number of Settlement Class Members who can make these claims or on the amounts paid to Settlement Class members.

Further, Settlement Class Members will also be able to claim up to three hours (at $26.67 per hour) in documented lost time spent addressing the effects of the Cyber Security Event. Again, if all 30,720 persons claimed only this amount, this portion of the Settlement has a potential value of over $2.4 million. Federman Dec., ¶19.

The injunctive relief and remedial measures that are included in the settlement also benefit Settlement Class members because Defendant has promised to implement and maintain important security changes, in particular as to the Settlement Class members' PII, for at least three years. Ex. 1, ¶51. This benefit is important to the Settlement Class as Artech still possesses Settlement Class members' PII. Federman Dec., ¶17.  Because these terms offer important benefits to the Class, this factor weighs heavily in favor of preliminary approval.

Further, in light of the monetary relief and prospective data security protections under the Settlement (especially when weighed against continued litigation), the agreement here is certainly not "obviously deficient." *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 ("Based on [the] risk and anticipated expense and complexity of further litigation, the court cannot say the proposed settlement is obviously deficient…"); *Tijero v. Aaron Bros., Inc.*, No. 10-01089-SBA, 2013 WL 6700102 at *8 (N.D. Cal. Dec. 19, 2013) ("[T]here are no obvious deficiencies. To the contrary, the settlement confers tangible monetary benefits to the class…."); *Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190, at *6 (finding "no obvious deficiencies" in settlement providing monetary relief to class).

### 4.    Discovery Completed and the Stage of the Proceedings

The Parties have engaged in informal discovery as described above, which culminated in a successful mediation and ultimately the proposed Settlement now before this Court. The discovery and good-faith settlement discussions that have taken place between the Parties to-date has provided proposed Class Counsel with an understanding of the strengths and weaknesses of Plaintiffs' case and based on that understanding, Class Counsel recommends

20

1    preliminary approval of the Settlement be granted. Federman Dec., ¶¶6, 24, 43.

2        The Parties' participation in informal discovery supports preliminary approval of the

3    settlement. *See, e.g., Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012

4    WL 423860 at *5 (N.D. Cal. Feb. 8, 2012) (holding that settlement was fair, reasonable, and

5    adequate where, *inter alia*, "the parties conducted a significant amount of informal

6    discovery…").

7                **5.        The Experience and Views of Counsel**

8        Class Counsel has a deep well of experience to draw on as he has served as counsel for

9    plaintiffs in numerous data breach actions, and other complex consumer class actions. Federman

10   Dec., ¶¶4, 5. Based on that experience, Class Counsel opines the Settlement is fair, reasonable,

11   and adequate for the Class. Federman Dec., ¶25.

12               **6.        Government Participant Not Present in Litigation**

13       There are no governmental agencies involved in this litigation. Federman Dec., ¶45.

14   However, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, the Attorney General of

15   the United States and Attorneys General of each State will be notified of the proposed

16   Settlement and will have the opportunity to make objections or raise concerns. *Id.*

17               **7.        The Reaction of the Class Members to the Proposed Settlement**

18       This factor is not ripe for analysis as Notice has not yet been disseminated. The Court

19   will be sent all objections and an accounting of all opt-out requests before the final approval

20   hearing. Federman Dec., ¶46.

21       **D.        The Settlement was the Product of Arm's-Length Negotiations**

22       Federal Rule of Civil Procedure 23(e)(2)(B) requires the Settlement be negotiated at

23   arm's-length. Additionally, the Settlement must "not [be] the product of collusion among the

24   negotiating parties." *In re Bluetooth Headset Prod. Liabl Litig.*, 645 F.3d 935, 947 (9th Cir.

25   2011). Here, there was sufficient informal discovery and expert analyses exchanged between the

26   parties to determine the extent of the harm to the proposed Class from the Cyber Security Event

27   as well as Artech's exposure, and arm's length negotiations facilitated by an experienced

28

mediator were utilized to reach the Settlement, which is in the best interest of the Class. Federman Dec., ¶¶15, 16; *Chambers v. Whirlpool Corp*., 980 F.3d 645, 669 (9th Cir. 2020) (where the lower court determined there was no collusion because, among other things, the parties settled via arm's length negotiations before an experienced mediator).

### E.   The Proposed Notice is Appropriate

Pursuant to Federal Rule of Civil Procedure 23(e)(1) the court must direct notice in a reasonable manner to all members of the Settlement Class who would be bound by the proposed Settlement. And Rule 23(c)(2) requires the Court to direct the best notice practicable, including individual notice to all members who can be identified through reasonable effort. *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (explaining that practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to object.").

The parties selected KCC Class Action Services, LLC as Settlement Administrator. Upon its appointment, KCC will directly mail via U.S. mail all Settlement Class members both the Notice and a second mailing as a reminder as may be requested by Class Counsel. Federman Dec., ¶40, Ex. 1, ¶54. This notice program provides the most practicable way of reaching Settlement Class members, meets due process requirements, and also reaches the greatest number of Settlement Class members. Federman Dec. ¶¶39, 40. Guidance, Item 3.

Within twenty-one (21) days after the date of the Preliminary Approval Order, Artech shall provide the Settlement Class List to the Settlement Administrator. Ex. 1, ¶54.

Plaintiffs' counsel will also, after appointment as Class Counsel, provide Internet notice of the Settlement directing Settlement Class members to contact the Settlement Administrator with any questions as well as direct them to the Settlement website. Federman Dec., ¶41.

### F.   The Claim Process is Simple and Not Cumbersome[9]

The Claim Process is straight-forward. KCC will disseminate Notice to all Settlement

---

[9] While it is currently unknown what the claims rate will be, Class Counsel has experienced anywhere from a 2-5% response rate. For example, in another data breach matter, *Tilleman, et*

Class members via U.S. mail. Ex. 1, ¶54, Federman Dec., ¶40. The Notice will direct them to the Settlement website where they will (i) have access to important documents for review including the Settlement Agreement and other filings; (ii) direction on how to submit a claim on-line or via U.S. mail; and (iii) find additional information. The Notice will also contain a toll-free phone number that Settlement Class members may call, where a live operator will be available during business hours to answer questions. Ex. 1, ¶35. Guidance, Item 3.

Concerning claims rates, a recent study by the Federal Trade Commission, based on data from 124 consumer class actions gathered from claims administrators, calculated the weighted mean claims rate between 4%-5%.[10] Here, Class Counsel expects the claims rate to be at the high end of the range, or greater, taking into consideration the fact that the Settlement Administrator will provide direct notice to Settlement Class Members, the ease of submitting claim forms online or through the mail, as well as the availability of a settlement website and toll-free operator available to answer calls during business hours. Guidance, Item 1(g).

### 1. The Court Should Approve Settlement Administration Deadlines and Schedule a Fairness Hearing

Plaintiffs request the Court approve a schedule of deadlines for the proper administration of the Settlement and set a hearing date for the Final Approval. Plaintiffs propose the following schedule, which provides the Parties with sufficient time and Settlement Class members ample opportunity to decide whether to object or request to be excluded.

| Event | Deadline | Date |
|-------|----------|------|
| Last day for Settlement Administrator to mail Settlement Notice to Class Members | Within thirty (30) Days from the Preliminary | |

---

*al. v. LeafFilter North, LLC, et al.*, W.D. Texas, Case No. 5:18-cv-01152, there was a 2.12% claims rate. This example was chosen because Class Counsel was class counsel in *LeafFilter* and KCC was the claims administrator for that matter. Guidance, Item (1)(g). *See* Exhibit A to the Federman Declaration for Guidance, Item 11 statistics for *LeafFilter*.

[10] *See* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. (Last accessed August 4, 2021).

| | Approval Order | |
|---|---|---|
| Last day for Class Members to submit claim forms | 90 Days from the Notice Deadline | |
| Deadline to Submit Motion for Attorneys' Fees, Costs and Service/Incentive Awards | At Least thirty-five (35) days before the Opt-Out and Objection deadlines | |
| Deadline to Object and Comment on Settlement | Within forty (40) days from the Notice Deadline | |
| Deadline to Submit Request for Exclusion | Within forty (40) days from the Notice Deadline | |
| Final Approval/Fairness Hearing | To Be Decided | |

Guidance, Item 9.

## V.    CONCLUSION

Plaintiffs respectfully request that this Motion be granted and the Court enter an order: (1) certifying the proposed classes for settlement; (2) preliminarily approving the proposed Settlement Agreement; (3) appointing the named Plaintiffs as Class Representatives and proposed Class Counsel as Settlement Class Counsel; (4) appointing KCC as Settlement Administrator; (5) approving the notice; and (6) approving the proposed class settlement administrative deadlines and procedures as well as setting a date for the final approval hearing and procedures regarding objections, exclusions and submitting Claim Forms.

DATED: August 5, 2021        Respectfully submitted,

*/s/William B. Federman*
William B. Federman*
*wbf@federmanlaw.com*

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

*Admitted pro hac vice*
Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
Evan M. Sumer (State Bar No. 329181)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

Cornelius P. Dukelow**
*cdukelow@abingtonlaw.com*
**ABINGTON COLE + ELLERY**
320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)

**pro hac vice application forthcoming*

*Counsel for Plaintiffs and the Proposed Class*

25