Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
Evan M. Sumer (State Bar No. 329181)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

William B. Federman, admitted *pro hac vice*
*wbf@federmanlaw.com*
Oklahoma Bar No. 2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

*Counsel for Plaintiffs and the Proposed Class*

*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIGID POLING, *et al.*, individually and on behalf of all others similarly situated and on behalf of the general public,<br><br>                    Plaintiffs,<br><br>v.<br><br>ARTECH, L.L.C.,<br><br>                    Defendant. | CASE NO. 3:20-cv-07630-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   February 10, 2022<br>Time:   9:30 a.m.<br>Judge: Maj. Judge Laurel Beeler<br>Crtrm:  Courtroom B – 15th Floor<br>Action filed: October 29, 2020 |

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE**  that on February 10, 2022 at 9:30 am, in Courtroom B, 15th Floor, of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or at such other time as may be set by the Court, the Honorable Magistrate Judge Laurel Beeler, presiding, Plaintiffs Brigid Poling and Dwight Jenkins will and hereby move for an Order pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure Awarding: (i) Attorneys' Fees and expenses to Class Counsel in the amount of $350,000.00 (including the Service Awards sought for the Named Plaintiffs); and (ii) Service Awards for Plaintiffs Brigid Poling and Dwight Jenkins in the amount of $2,500.00 each.

 This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying declaration of William B. Federman and declaration of Plaintiffs and any exhibits attached hereto, the pleadings filed in this Action, and other such matters and arguments as the Court may consider at the hearing on this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should award $350,000.00 to Class Counsel as Attorneys' Fees and unreimbursed expenses that Class Counsel reasonably and necessarily incurred in furtherance of the Action; and

2. Whether the Court should award Service Awards to Plaintiffs Brigid Poling and Dwight Jenkins in the amount of $2,500.00 each, to be paid from the $350,000.00, for their time and effort over the past thirteen months in supporting counsel pursuing this Action.

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION.................................................................................................................. 1

II. Factual and Procedural Background .................................................................................. 2

    a. Informal Discovery...................................................................................................... 3

    b. Plaintiffs Were Granted Preliminary Approval .................................................... 3

    c. The Settlement is the Product of Informed Negotiations and Resulted from Arm's-Length Bargaining........................................................................................................................ 4

III. TERMS OF THE SETTLEMENT AGREEMENT ........................................................... 5

    a. Settlement Benefits...................................................................................................... 5

        i. Monetary Relief ................................................................................................ 5

        ii. Injunctive Relief.............................................................................................. 7

        iii. Notice to Class ................................................................................................ 9

IV. CLASS COUNSEL'S REQUESTED FEES ARE REASONABLE AND FAIR.............. 9

    a. The Requested Attorneys' Fee Award (Including Expense Reimbursement and Plaintiffs' Service Awards) is Reasonable Under the Lodestar Analysis........................................ 10

    b. Class Counsel Expended Significant Time and Resources to Resolve the Action ....... 11

    c. Class Counsel's Hourly Rates are Reasonable .................................................... 12

    d. A Lodestar Multiplier is Justified .......................................................................... 14

        i. Class Counsel Achieved a Significant Benefit to the Class ..................... 14

        ii. Class Counsel Took a Significant Risk Pursuing this Action.................. 15

        iii. Class Counsel Provided High-Quality Representation to the Class........ 16

        iv. The Requested Fee and Expense Award Would Result in a Multiplier of approximately 1.59, Which is Extremely Modest and Reasonable........................ 17

        ii. The Fee Award Requested is Reasonable Under a Percentage of Recovery Analysis........................................................................................................................ 18

        v. The Absence of Collusion Between the Settling Parties Further Supports the Requested Fee Award................................................................................................. 22

i

V.      THE EXPENSES REQUEST IS REASONABLE ............................................................. 22

VI.     THE NAMED PLAINTIFFS SHOULD BE AWARDED SERVICE AWARDS ........... 23

VII.    CONCLUSION ............................................................................................................ 24

1

## <u>TABLE OF AUTHORTIES</u>

2

**Cases**                                             **Page(s)**

*Alpine Pharmacy v. Chas. Pfizer & Co.*,
  481 F.2d 1045 (2d Cir. 1973)..................................................................................... 21

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. July 1, 2013)............................................................... 16, 21

*Blum v. Stenson*,
  465 U.S. 886 (1984)................................................................................................ 21

*Craft v. County of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 1995) ................................................................. 18

*Fischel v. Equitable Life Assur. Soc'y of the United States*,
  307 F.3d 997 (9th Cir. 2002) ................................................................................. 15

*Foos v. Ann, Inc.*,
  2013 U.S. Dist. LEXIS 136918 (S.D. Cal. 2013) .................................................. 11

*Friedman v. Quest Energy Partners LP*,
  2010 WL 4925133 (W.D. Okla. Nov. 29, 2010) .................................................... 14

*Harris v. Vector Mktg. Corp.*,
  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ......................................................... 5

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ................................................................... 9, 10, 18

*Hernandez v. Restoration Hardware, Inc.*,
  4 Cal.5th 260 (2018) ............................................................................................... 9

*Hershey v. ExxonMobil Oil Corp.*,
  2012 U.S. Dist. LEXIS 153803 (D. Kan. Oct. 26, 2012) ....................................... 21

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ....................................................... 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 ............................................................................................... 14, 19

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................. 23

iii

*In re M.D.C. Holdings Sec. Litig.*,
  1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ............................................................ 21

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................ 18

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......................................................... 15, 16

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .................................................................................. 23

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  2008 WL 1956267 (S.D.N.Y. May 1, 2008) .......................................................... 10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .................................................................................. 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................................ 13

*Jane L. v. Bangerter*,
  61 F.3d 1505 (10th Cir. 1995) ................................................................................ 13

*Jeffboat LLC. v. Director, Office of Workers' Comp Programs*,
  553 F.3d 487 (7th Cir. 2009) .................................................................................. 13

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) .................................................................................. 21

*Lane v. Page*,
  862 F. Supp. 2d 1182 (D.N.M. 2012) ..................................................................... 10

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 18

*McKenzie Constr., Inc. v. Maynard*,
  823 F.2d 43 (3d Cir. 1987) ..................................................................................... 21

*Mirakay v. Dakota Growers Pasta Co.*,
  2014 WL 5358987 (D.N.J. Oct. 20, 2014) .............................................................. 10

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) .................................................................................... 11

iv

*Nakkhumpun v. Taylor,*
  2016 WL 11724397 (D. Colo. June 13, 2016)............................................................. 14

*Pauley v. Cf Entm't,*
  2020 U.S. Dist. LEXIS 187614 (C.D. Cal. July 23, 2020) ........................................ 23

*Rodriguez v. Disner,*
  688 F.3d 645 (9th Cir. 2012) ...................................................................................... 9

*Rosenbaum v. MacAllister,*
  64 F.3d 1439 (10th Cir. 1995) .................................................................................... 10

*Stanaford v. Genovese,*
  2015 WL 4930209 (S.D. Fla. Aug. 17, 2015)............................................................. 14

*Stanger v. China Elec. Motor, Inc.,*
  812 F.3d 734 (9th Cir. 2016) ...................................................................................... 15

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ..................................................................................... 9, 15

*Stetson v. Grissom,*
  821 F.3d 1157 (9th Cir. 2016) ................................................................................... 9, 15

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
  896 F.2d 403 (9th Cir. 1990) ...................................................................................... 12

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ...............................................................................Passim

*Weinberger v. Great N. Nekoosa Corp.,*
  925 F.2d 518 (1st Cir. 1991)...................................................................................... 10

*Welch v. Metro. Life Ins. Co.,*
  480 F.3d 942 (9th Cir. 2007) ...................................................................................... 13

*Wershba v. Apple Comput., Inc.,*
  91 Cal. App. 4th 224 (2001) ....................................................................................... 9

*Zucker v. Occidental Petroleum Corp.,*
  192 F.3d 1323 (9th Cir. 1999) .................................................................................... 9

**Statutes**
Cal. Bus. & Prof. Code §17200 ................................................................................... 3
Cal. Civ. Code §1798.100 ............................................................................................ 3
Cal. Civ. Code §1798.80 .............................................................................................. 3

**Rules**

Fed. R. Civ. P. 23(h) ........................................................................................................... 9
Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure ................................. 1

**Other Authorities**

3 Newberg § 14.03 ............................................................................................................ 17
4 H. Newberg & A. Conte, *Newberg on Class Actions*, § 14:6 (4th ed. 2006) ................. 21
Rubenstein, Newberg on Class Actions § 15:56 (5th ed. 2016) ........................................ 10

## I.   INTRODUCTION

Plaintiffs Brigid Poling and Dwight Jenkins ("Plaintiffs" or "Named Plaintiffs") through their undersigned counsel, respectfully move this Court for entry of an Order approving: (1) Class Counsel's[1] requested attorneys' fees award and reimburse expenses in the amount of $350,000.00; and (2) service awards to the Named Plaintiffs of $2,500.00 each.

This data breach action (the "Action") arises out of the alleged negligence by Defendant Artech, L.L.C. ("Artech" or "Defendant") in allegedly failing to safeguard the Personal Information of current and former employees from unauthorized access and disclosure.

On or about September 4, 2020, Defendant began notifying individuals, including Plaintiffs and other Class members, that on January 8, 2020, Defendant received a report of unusual activity relating to an employee's Artech user account. A subsequent investigation determined that an unauthorized cybercriminal gained access to certain of Defendant's computer systems between January 5, 2020 and January 8, 2020 (the "Cyber Security Event").  The Personal Information (or personality identifiable information ("PII")) potentially accessible during the Cyber Security Event included names, Social Security numbers, medical information, health insurance information, financial information, payment card information, driver's license/state identification numbers, government issued identification numbers, passport numbers, visa numbers, electronic/digital signatures, usernames and password information. As a result, Plaintiffs have suffered damages related to the Cyber Security Event.

The parties attended a full-day mediation session on June 28, 2021 before mediator Judge Edward A. Infante (Ret.) in which the parties reached agreement on essential terms. Negotiations continued and the proposed resolution received preliminary approval by this Court on September 30, 2021 (ECF No. 43)[2]. The Settlement provides meaningful benefits to the Settlement Class

---

[1] For purposes of this Motion, "Class Counsel" herein shall refer to Plaintiffs' counsel, Federman & Sherwood, Green & Noblin, P.C., and Abington Cole + Ellery.

[2] The deadlines set forth in the Preliminary Approval Order were reset in the Order Amending Procedures for Final Approval Hearing and Deadlines Set in Preliminary Approval Order (ECF No. 43), entered herein on October 29, 2021 (ECF No. 47).

1   members ("Class members").[3]

2       Plaintiffs submit this motion and memorandum of points and authorities in support thereof

3   in accordance with the Court's Order Amending Procedures for Final Approval Hearing and

4   Deadlines Set in Preliminary Approval Order (ECF No. 43), entered herein on October 29, 2021

5   (ECF No. 47). Artech has agreed not to oppose Class Counsel's request for attorneys' fees,

6   reimbursement of expenses, and Plaintiffs' service awards totaling $350,000.00. *See* SA, ¶¶72, 74

7   (Doc. No. 36-1).

8   ## II.    FACTUAL AND PROCEDURAL BACKGROUND

9       Defendant is a workforce solutions company providing managed services, contingent labor,

10  staff augmentation, IT consulting, project outsourcing, and statement of work services across

11  multiple industries, including systems integration, banking and finance, telecommunications,

12  pharmaceutical and life sciences, energy, healthcare, technology, transportation, and local and

13  federal government agencies. *See* First Amended Class Action Complaint, (Doc. No. 31, ¶1) (the

14  "FAC").

15      On or about September 4, 2020, Defendant began notifying individuals, including Plaintiffs

16  and other Class members, that on January 8, 2020, Defendant received a report of unusual activity

17  relating to an employee's Artech user account. A subsequent investigation determined that an

18  unauthorized cybercriminal gained access to certain of Defendant's computer systems between

19  January 5, 2020 and January 8, 2020 (the "Cyber Security Event"). *Id.* ¶ 2. The Personal Information

20  potentially accessible during the Cyber Security Event included names, Social Security numbers,

21  medical information, health insurance information, financial information, payment card

22  information, driver's license/state identification numbers, government issued identification

23  numbers, passport numbers, visa numbers, electronic/digital signatures, usernames and password

---

[3] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement and Release dated August 3, 2021 (the "Settlement Agreement" or "SA"), filed on August 5, 2021 (ECF No. 36-1). The Settlement Class is comprised of the following:

    All persons in the United States and Overseas Military identified on the "Settlement Class List," as defined in the Settlement Agreement, including all individuals who were sent notification by Artech that their Personal Information may have been accessible during the Cyber Security Event.

1    information. *Id*. ¶ 3.

2        The original class action complaint was filed on October 29, 2020 (Doc. No. 1). On July 16,

3    2021, Plaintiffs filed the FAC, adding Plaintiff Jenkins as a Named Plaintiff and alleging causes of

4    action for negligence, invasion of privacy, unjust enrichment, breach of fiduciary duty, breach of

5    confidence, breach of implied contract, breach of implied covenant of good faith and fair dealing,

6    violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §17200, *et seq*.),

7    violations of the California Customer Records Act (Cal. Civ. Code §1798.80, *et seq*.), violations of

8    California's Consumer Privacy Act (Cal. Civ. Code §1798.100, *et seq.*), and injunctive/declaratory

9    relief. *See generally,* FAC (Doc. No. 31). Defendant denies the allegations and all liability. SA, p.

10   1 (Doc. No. 36-1).

11       **a.    Informal Discovery**

12       Plaintiffs and Defendant (collectively, the "Parties") engaged in informal discovery leading

13   up to the mediation and Settlement. The Parties had ongoing written and oral communications to

14   address the information and exchanged documents critical for a meaningful mediation, which Artech

15   provided.  *See* Declaration of William B. Federman in Support of Plaintiffs' Notice of Motion and

16   Motion for Preliminary Approval of Proposed Settlement and Memorandum of Points and

17   Authorities in Support Thereof, ¶6 ("Federman Preliminary Approval Dec.") (Doc. No. 36-2).

18   Plaintiffs engaged cyber security experts who were involved in drafting and submitting to Artech

19   informal requests for information and production of documents. *Id.* ¶7. The individual Plaintiffs

20   worked diligently with their counsel to provide documents and information necessary to aid the

21   Class in furtherance of settlement negotiations. *Id.* ¶8.

22       The Parties held a global meeting before the mediation, which included both Parties' experts,

23   to engage in a discussion regarding the Cyber Security Event and to assess and opine on the impact

24   of the Cyber Security Event on both the Class members and Artech. This meeting proved useful in

25   informing Class Counsel on settlement discussions. *Id.* ¶6.

26       **b.    Plaintiffs Were Granted Preliminary Approval**

27       By Order dated September 30, 2021, the Court granted Plaintiffs' Motion for Preliminary

28

Approval of Proposed Settlement ("Preliminary Approval Order") (Doc. No. 43). The deadlines set forth in the Preliminary Approval Order were reset in the Order Amending Procedures for Final Approval Hearing and Deadlines Set in Preliminary Approval Order (Doc No. 43), entered herein on October 29, 2021 (Doc. No. 47) ("Order Amending"). Pursuant to the Order Amending, the last day to submit motion for attorney's fees, costs, and service or incentive awards is no later than 35 calendar days before the opt-out and objection deadlines (December 3, 2021). Class members may object to or opt out of the settlement until 40 calendar days after the Notice Deadline (January 7, 2022) (Order Amending, Doc No. 47).

The Court will hold the Final Approval Hearing on February 10, 2021, during which time the Court will also hear this Motion for Attorney Fees, Expenses, and Service Awards. *Id*. Class Counsel will submit a Proposed Order regarding all motions pending before the Court in advance of the Final Approval Hearing.

### c.      The Settlement is the Product of Informed Negotiations and Resulted from Arm's-Length Bargaining

The Settlement accounts for the strengths and weaknesses of each Party's position and the uncertainty regarding class certification, trial, or both. *See* Declaration of William B. Federman, ¶3, ("Federman Dec."), **Exhibit 1**, attached hereto. Prior to agreeing to settle this matter, both Parties spoke with their clients about the Cyber Security Event. *Id*., ¶4, **Ex. 1**. The Parties reviewed documents and information relating to Plaintiffs' employment with Defendant, Plaintiffs' experiences and injuries related to the Cyber Security Event, and general information related to the Cyber Security Event's cause and Artech's response to the Cyber Security Event. *Id*., ¶5, **Ex. 1**.

The Parties have actively litigated this matter since it commenced in October 2020. Prior to reaching the Settlement, the Parties extensively investigated the veracity, strength, and scope of the claims. *Id*., ¶6, **Ex. 1**. The Parties have reached the Settlement based on a large volume of facts, evidence, and investigation. *Id*., ¶7, **Ex. 1**. Class Counsel conducted significant investigation into this case, engaged in informal discovery, worked with experts from both sides, and reviewed and analyzed information provided by Defendant. *Id*., ¶8, **Ex. 1.** Class Counsel also worked with the

Named Plaintiffs to gather facts. *Id.*, ¶9, **Ex. 1.**  Counsel for the Parties met and conferred multiple times regarding issued related to the pleadings, informal discovery, motion practice, mediation and settlement, and the production of information. *Id.*, ¶10, **Ex. 1.**

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973 at *8 (N.D. Cal. Apr. 29, 2011) (internal citations omitted).

In anticipation of the scheduled mediation date of June 28, 2021, Plaintiffs sent a detailed demand letter to Artech, setting forth a proposed settlement structure to guide negotiations. Federman Preliminary Approval Dec., ¶11 (Doc. No. 36-2). On June 28, 2021, after a full day of mediation with Judge Edward A. Infante (Ret.) and arm's length negotiations, the Parties agreed to most of the settlement terms. *Id.* ¶12. Arm's-length negotiations continued over the following days to address the remaining issues until an agreement was reached on all issues that comprise the Settlement Agreement.  *Id.*

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Class, as defined *supra*, is comprised of 30,720 individuals.

### a.   Settlement Benefits

The settlement provides for monetary, injunctive, and other relief.

#### i.   Monetary Relief

##### A.   Cash Payment for Reimbursement of Out-of-Pocket Losses

Settlement Class members may submit a claim for up to a maximum of $10,000.00 for reimbursement of out-of-pocket expenses or losses. *See* Settlement Agreement and Release, Ex. 1 to Plaintiffs' Motion for Preliminary Approval, ¶¶ 40, 50 (Doc. No. 36-1). "Out-of-Pocket" expenses or losses are unreimbursed costs or expenditures incurred by a Class member that are fairly traceable to the Cyber Security Event. These may include, but are not limited to: costs associated with credit monitoring or identity theft insurance purchased directly by the claimant, provided that the product was purchased primarily as a result of the Cyber Security Event; costs associated with requesting a

credit report, provided that the claimant requested the report primarily as a result of the Cyber Security Event; costs associated with a credit freeze, provided that the claimant requested the freeze primarily as a result of the Cyber Security Event; costs associated with cancelling a payment card and/or obtaining a replacement payment card, provided that the claimant's request for the cancellation and/or replacement was primarily the result of the Cyber Security Event; costs associated with closing a bank account and/or opening a new bank account, provided that the claimant's request to close and/or open a bank account was primarily the result of the Cyber Security Event; postage, long-distance phone charges, express mail and other incidental expenses, provided that the claimant provides documentation of the charges and an explanation of their relationship to the Cyber Security Event; overdraft and/or overdraft protection fees, provided that the fees were incurred as a result of the Cyber Security Event; late and/or missed payment fees and/or charges, provided that the fees and/or charges were incurred as a result of the Cyber Security Event; the increase in interest on credit cards or other loans caused by a late or missed payment that was a result of the Cyber Security Event; and damage to credit and costs associated with a decreased credit score if fairly traceable to result of the Cyber Security Event. *Id.*, Ex. 1, ¶22 (Doc. No. 36-1).  The submitted evidence must show: (a) the loss is an actual, documented, and unreimbursed monetary loss as shown by (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Participating Settlement Class Member that documents the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation; (b) the loss was more-likely-than-not caused by identity theft or other fraud or misuse of the Personal Information fairly traceable to the Cyber Security Event; (c) the loss occurred after January 5, 2020; and (d) the Settlement Class member made reasonable efforts to avoid or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.*, Ex. 1, ¶40 (Doc. No. 36-1).

A stellar feature of the Settlement is there will be no aggregate cap on the amounts paid to Settlement Class members. Federman Preliminary Approval Dec., ¶¶18, 19 (Doc. No. 36-2). A claim for reimbursement of any such losses must be accompanied by information required by the Settlement Administrator to evaluate the claim. Ex. 1, ¶¶39, 40 (Doc. No. 36-1). Further, because there is no aggregate cap, there is **no** possibility of reversion.

**B.      Cash Payment for Reimbursement of Time**

Settlement Class members may submit a claim for reimbursement of up to three (3) hours, at $26.67 per hour, for time spent remedying issues related to the Cyber Security Event, provided that the Settlement Class member provides documentation or a narrative explanation plausibly establishing that the time was spent dealing with issues related to the Cyber Security Event. Ex. 1, ¶¶39, 40 (Doc. No. 36-1).

**C.      Three Years of Credit Monitoring and Identity Theft Protection Program**

All Participating Settlement Class Members shall have until three (3) months following the Final Approval Hearing to request access or extension of their access to credit monitoring and identity protection services through Kroll paid for by Defendant for a period of three (3) years after their actual enrollment or the Claims Deadline, whichever is later. *Id.*, Ex. 1, ¶38 (Doc. No. 36-1).

**ii.      Injunctive Relief**

Artech, having engaged a third-party cybersecurity consultant, has agreed to continue, adopt and/or implement certain business practices and remedial measures ("Business Practice Commitments") for a period of at least three years following the Effective Date of the Settlement, including the following with regard to the Personal Information of former and current employees and job applicants:

a.   Artech has conducted baseline penetration testing through a well-established third-party IT security vendor, and will continue to conduct substantially-equivalent penetration testing at least annually. Defendant has included sufficient funds in its IT security budget to accomplish annual penetration testing as outlined in this subparagraph for

2021, and will reauthorize sufficient funds in its IT budget for each subsequent year through 2024 to utilize the same or any comparably-priced improved testing technology as may be available.

b.   Artech shall continue to ensure that anti-malware software resides on all its servers, and that its VPN appliance is updated as soon as practicable after security updates become available, but in no instance less often than monthly.

c.   Artech is implementing a company-wide encryption protocol wherein all Personal Information is segregated by its employees and encrypted daily.

d.   Artech is testing its IT security for NIST compliance, and has achieved compliance with many NIST requirements, with the remainder to be addressed through SIEM software. Defendant will provide a declaration or certification of such compliance on or before December 21, 2022.

e.   Artech is currently evaluating several Security Information and Event Management ("SIEM") software options and shall deploy SIEM software on or before December 31, 2022.

f.   Artech currently provides IT security and Personal Information training to all of its personnel during onboarding, and on a quarterly basis thereafter, which will continue. This training includes directions about how to handle suspicious communications and documents and encourages personnel to report any concerns about Artech's information security systems.

g.   Artech has developed and implemented a formal written Personal Information policy, which it will continue to maintain with appropriate updates.

h.   Artech is developing a suite of testing and auditing tools through a third-party vendor designed to locate Personal Information located outside Artech's encrypted environment, which will be implemented on or before December 31, 2021.  Artech shall provide to the Court a certification from its third-party vendor that all Personal

Information located during the auditing process has been either destroyed or moved to Artech's encrypted environment.

i.   Artech shall continue to provide employees and former employees a means requesting their Social Security numbers and dates of birth be deleted after such information is no longer needed to fulfill Artech's corporate mission, and will delete such information upon request.

*Id.*, Ex. 1, ¶51 (Doc. No. 36-1).

### iii.   Notice to Class

Payment of all costs associated with providing Notice and administration of the settlement will be paid by Artech. *Id.*, Ex. 1, ¶76 (Doc. No. 36-1). The Settlement Administrator has begun providing notice to the Settlement Class. Federman Dec., ¶11, **Ex. 1**.

## IV.   CLASS COUNSEL'S REQUESTED FEES ARE REASONABLE AND FAIR

The Court has inherent authority to ensure that the amount and mode of payment of attorney fees in class actions are fair and proper. *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999). "In class action litigation, a district court 'may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.'" *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) (*citing Rodriguez v. Disner* (*Rodriguez II*), 688 F.3d 645, 653 (9th Cir. 2012) (*quoting* Fed. R. Civ. P. 23(h))). The Court should "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

"In diversity actions [like this], the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011). Both California state and federal courts recognize two methods for evaluating attorney fees: (1) lodestar plus multiplier method; and (2) the percentage of recovery method. *Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 254 (2001) (disapproved on other grounds in *Hernandez v. Restoration Hardware, Inc.*, 4 Cal.5th 260, 269-70 (2018)); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "Under California law, the primary method for determining the amount

of reasonable attorneys' fees is the lodestar method." *Hartless*, 273 F.R.D. at 642. In cases in which the class benefit can be monetized with a reasonable degree of certainty, a percentage of the benefit approach may be used to cross-check the lodestar calculation." *Id*. Moreover, courts routinely acknowledge that parties may settle claims for attorney fees in a class action by entering into an agreement requiring a defendant to pay the plaintiff's attorney fees. *See Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 523 (1st Cir. 1991).

Here, "the parties negotiated and agreed upon the attorneys' fee provision in the Settlement,"—but only *after* the substantive terms of the Settlement were finalized, Federman Dec., ¶12, **Ex. 1**—so "regardless of the size of the fee award, class members who apply for recovery under the terms of the Settlement will receive the same benefit; the fee award does not reduce the recovery to the class." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *15-16 (S.D.N.Y. May 1, 2008). An independently negotiated fee award gives the defendant an incentive to bargain aggressively and thus diminishes the danger of conflicts of interest between attorneys and class members, greatly reducing the Court's fiduciary role in overseeing the award. *Mirakay v. Dakota Growers Pasta Co.*, No. 13-CV-4429 JAP, 2014 WL 5358987, at *11 (D.N.J. Oct. 20, 2014); *see also Lane v. Page*, 862 F. Supp. 2d 1182, 1258 (D.N.M. 2012) (approving fees that were negotiated separately and that did not diminish class recovery).

a.   **The Requested Attorneys' Fee Award (Including Expense Reimbursement and Plaintiffs' Service Awards) is Reasonable Under the Lodestar Analysis**

In a case like this one, in which the parties reach a settlement with a claims-made structure that has no upper cap on relief, courts evaluate attorney fee requests primarily by using what is known as the lodestar method. This is because a claims-made settlement has an indefinite total value and is not typically capable of being characterized as a true "common fund" for the purpose of a percentage-of-the-fund fee analysis. *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1447-48 (10th Cir. 1995) (percentage award not warranted where settlement provides common benefit but does not create common fund); Rubenstein, Newberg on Class Actions § 15:56 (5th ed. 2016)

("Newberg") (noting that "[c]laims-made settlements do not create a common fund"). All fees and costs awarded here, moreover, will be paid separately by Defendant and will not reduce the amount paid to the Class in any way.

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (internal citations omitted). "The hours expended and the rate should be supported by adequate documentation and other evidence…" *Foos v. Ann, Inc.*, 2013 U.S. Dist. LEXIS 136918, *12 (S.D. Cal. 2013).

**b.    Class Counsel Expended Significant Time and Resources to Resolve the Action**

Class Counsel has litigated this matter for more than a year. Class Counsel's work in this litigation includes significant investigation into the facts and informal written discovery, including a global meeting held between Plaintiffs' and Defendant's cybersecurity experts. Federman Dec. ¶13, **Ex. 1**. As discussed in Section II.c, *supra*, the work in this matter has been extensive, demanding, and ultimately successful in achieving a substantial settlement. Class Counsel are well experienced class action data breach attorneys and used that experience to obtain a significant settlement. *Id.*, ¶14, **Ex. 1**.

To successfully pursue the claims at issue in this case and to achieve the resulting Settlement, Class Counsel spent 296.45 total hours of partner, associate, and paralegal time.[4] *Id.*, ¶15, **Ex. 1**. Federman & Sherwood timekeepers have spent 221.35 hours through November 29, 2021, with hourly rates ranging from $250.00 for work performed by a paralegal and $400.00-$850.00 for work performed by four attorneys. *Id.*, ¶16, **Ex. 1**. Timekeepers from Green & Noblin, P.C., who acted as local counsel, spent 11.20 hours litigating this matter, and timekeepers from co-counsel Abington Cole + Ellery spent 63.90 hours litigating this matter. *Id.*, ¶17, **Ex. 1**. In addition, Class Counsel anticipates spending additional time seeking final approval and assisting with settlement administration as needed including follow up telephone calls and contact with members of the Class.

---

[4] Class Counsel are prepared to provide the Court with Class Counsel's detailed billing entries for *in camera* review should the Court request it.

*Id.*, ¶18, **Ex. 1**. All total, Class Counsel estimate that the attorney and paralegal time commitment for past completed and future anticipated work will be at least 346.45 hours. *Id.*, ¶19, **Ex. 1**. Class counsel also incurred total expenses of $16,041.95 including $5,625.00 in expert fees. *Id.*, ¶20, **Ex. 1**.

The 296.46 total hours expended by Class Counsel does *not* include the time expended by Class Counsel in preparing the present Motion, *nor* does it include reductions made in the exercise of billing judgment, *nor* does it include the additional hours that Class Counsel will continue to work even after Final Approval. *Id.*, ¶21, **Ex. 1**. In Class Counsel's professional opinion, the time submitted to the Court is of the kind and character that Counsel would bill to a fee-paying client and is reasonable in light of the complexity of this litigation. *Id.*, ¶22, **Ex. 1**.

Moreover, Class Counsel staffed this case efficiently from the outset, primarily utilizing two attorneys experienced in data breach class actions: William B. Federman and Molly E. Brantley. *Id.*, ¶23, **Ex. 1**. Mr. Federman and Ms. Brantley were both actively managing this litigation from inception through the present. *Id.*, ¶24, **Ex. 1**. Importantly, Ms. Brantley, who bills at an appreciably lower rate than Mr. Federman, was assigned the more time-consuming yet critical tasks such as substantive researching and drafting. These staffing decisions resulted in Class Counsel billing considerably less on the case than if more senior attorneys had handled Ms. Brantley's tasks or if more attorneys had been involved.

Class Counsel have also incurred $16,041.95 in expenses litigating this matter, all on a contingency basis with a significant risk of no recovery. Federman & Sherwood incurred $15,054.72 in litigation costs and expenses for the Action, and Green & Noblin, P.C. incurred $987.23 in expenses. *Id.*, ¶25, **Ex. 1**. Class Counsel's costs incurred to date are for expert fees, postage, Westlaw and PACER charges, photocopies, and mediation expenses. *Id.*, ¶26, **Ex. 1**.

### c.    Class Counsel's Hourly Rates are Reasonable

Prior court approvals of fee applications based on Class Counsel's same or similar rates in the consumer class action context offer one basis to conclude that Class Counsel's hourly rates are reasonable for similar work. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407

1   (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees

2   in the community, and rate determinations in other cases, particularly those setting a rate for the

3   plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."). "District courts have

4   the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the

5   attorneys' current rates to all hours billed during the course of the litigation or using the attorneys'

6   historical rates and adding a prime rate enhancement." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942,

7   947 (9th Cir. 2007).

8       Class Counsel's timekeeper rates are within a reasonable range. Federman & Sherwood's

9   hourly rates range from $400 to $850 for attorneys with two to thirty-nine years of experience and

10  $250.00 for a paralegal with thirteen years of experience; these rates are reasonable contingency fee

11  rates for each timekeeper. Federman Dec. ¶27, **Ex. 1**. In addition, Green & Noblin, P.C.'s timekeeper

12  rates are also within a reasonable range: $850.00/hour for an attorney with more than thirty-seven

13  years' experience. *Id.*, ¶28, **Ex 1**. Co-counsel from Abington Cole + Ellery, who has more than

14  twenty years' experience, seeks an hourly rate of $750.00. *Id.*, ¶29, **Ex 1**.

15      Further, Class Counsel's rates are reasonable when compared with the rates commonly

16  approved in data breach class actions. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

17  No. 16-MD-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020) (finding billing

18  rates—which ranged from $450 to $900 for partners, $160 to $850 for non-partner attorneys, and

19  $50 to $440 for paralegals and staff—are "reasonable and in line with amounts charged in similar

20  cases") (discussing cases); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018

21  WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving hourly billing rates, which ranged from

22  $400 to $970 for partners, $185 to $850 for non-partner attorneys, and $95 to $440 for paralegals,

23  law clerks, and litigation support staff). Because data breach class actions are a highly specialized

24  area of law, the Court's analysis is informed by these national rates approved in other data breach

25  actions. *See Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995) (noting that, when "special

26  skills" are required for unique litigation, the market for reasonable hourly rates may be expanded);

27  *Jeffboat LLC. v. Director, Office of Workers' Comp Programs*, 553 F.3d 487, 490 (7th Cir. 2009)

28

1   (holding that it is appropriate to view a relevant community as a community of practitioners where

2   "the attorneys practicing are highly specialized and the market for legal services in that area is a

3   national market").

4          Federman & Sherwood, the primary timekeeper in this matter, consists of highly experienced

5   attorneys who have successfully prosecuted numerous data breach class actions, consumer class

6   actions, and other complex litigation matters.  Federman Dec. ¶30, **Ex. 1.**  Class Counsel's lodestar

7   reflects the attorneys' usual billing rates.  *Id.*, ¶31, **Ex. 1**.  Federman & Sherwood's billing rates

8   have been evaluated and found to be reasonable by numerous courts in and around the country.  *See,*

9   *e.g., In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.,* No. 17-ml-

10  2792-D (W.D. Okla., Jun. 11, 2020) (Dkt. No. 256), slip op. at 15 (finding that Federman &

11  Sherwood's billing rates "are reasonable" for the "geographic area[] in comparable cases, and Class

12  Counsel's affidavits support the request's reasonableness") *aff'd*, 2021 WL 1825685, at *12 (10th

13  Cir. May 7, 2021); *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2016 WL 11724397, at

14  *5 (D. Colo. June 13, 2016) (finding Federman & Sherwood's billings reasonable and approving

15  fee request); *Stanaford v. Genovese*, No. 9:13-CV-80923 (KLR), 2015 WL 4930209, at *1 (S.D.

16  Fla. Aug. 17, 2015) (same); *Friedman v. Quest Energy Partners LP*, No. CIV-08-1025-M, 2010

17  WL 4925133, at *6 (W.D. Okla. Nov. 29, 2010) (same).

18

19          **d.      A Lodestar Multiplier is Justified**

20          "Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or

21  downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness'

22  factors, including the quality of representation, the benefit obtained for the class, the complexity and

23  novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prods. Liab.*

24  *Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011) (internal citations omitted). "Foremost among these

25  considerations, however, is the benefit obtained for the class." *Id.* at 942.

26          **i.      Class Counsel Achieved a Significant Benefit to the Class**

27          As described in detail *supra*, the settlement provides an exceptional and substantial benefit

28  to the Class, especially given the uncertainties with data breach class action litigation. The

Settlement provides that Settlement Class members may submit claims for up to a maximum of $10,000.00 for reimbursement of out-of-pocket expenses or losses. Ex. 1, ¶¶40, 50 (Doc. No. 36-1). For those Settlement Class members who spent time responding to the Cyber Security Event, they may submit a claim for reimbursement for up to three (3) hours at $26.67 per hour. Ex. 1, ¶¶39, 40 (Doc. No. 36-1).

Moreover, all Participating Settlement Class members shall have the opportunity to request access request access or extension of their access to credit monitoring and identity protection services through Kroll paid for by Defendant for a period of three (3) years after their actual enrollment or the Claims Deadline, whichever is later. Ex. 1, ¶38 (Doc. No. 36-1).

Further, because there is no aggregate cap on the Settlement, there is **no** possibility of reversion to Defendant.

### ii.   Class Counsel Took a Significant Risk Pursuing this Action

A multiplier would be further justified because the Action presented a significant risk of non-payment. *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007); *Vizcaino*, 290 F.3d at 1048. "The district court *must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson*, 821 F.3d at 1166 (emphasis in original) (citing *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) (*quoting Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002)). In addition, "since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton*, *supra*, 327 F.3d at 966.

Further, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir.

1994); *see also Vizcaino*, 290 F.3d at 1051. The considerable risks undertaken by Class Counsel on an entirely contingent basis would further justify a multiplier here. *Vizcaino*, 290 F.3d at 1050. "The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *In re Omnivision*, 559 F. Supp. 2d at 1047. A multiplier finds further support where, as here, counsel has expended "substantial outlay" in time and resources while "there is a risk that none of it will be recovered." *Id*.

Had the parties not agreed to the Settlement, continued litigation presented significant risk that the Class would recover nothing. First, continued litigation presents several procedural challenges. Indeed, class action data breaches are a novel and complex sector of law. As discussed in Plaintiffs' Motion for Preliminary Approval, there are inherent risks associated with taking any data breach class action to trial, including pre-trial risks regarding class certification and summary judgment. Further, data breaches often result in injuries, such as the risk of future identity theft and loss of control of the plaintiffs' Personal Information. Both are the subject of intense controversy and thus, addressing the nature and cause of Plaintiffs' past damage, and the projection of Plaintiffs' current and future damage due to the Cyber Security Event, will be strongly challenged.  These issues add uncertainty to continued litigation. Next, obtaining class certification is uncertain in the current judicial landscape, particularly in the aftermath of the U.S. Supreme Court's *TransUnion LLC v. Ramirez* decision. Certifying a class composed of more than 30,000 current and former employees affected by the Cyber Security Event presents complex issues that could undermine certification at the class certification stage as well as at other, later stages of the litigation.

Here, "[t]he Settlement . . . provides Class Members with another significant benefit that they would not have received if the case proceeded—certain and prompt relief." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. July 1, 2013). The Settlement avoids continued, costly litigation of heavily contested and uncertain issues.

### iii.     Class Counsel Provided High-Quality Representation to the Class

The Court previously considered and scrutinized the qualifications of Federman &

Sherwood as Class Counsel in making its determinations necessary to issue its Preliminary Approval Order (Doc. No. 43). In addition, Class Counsel worked ably and diligently to achieve valuable relief for the Class. Class Counsel investigated Plaintiff Poling's claims prior to filing suit; investigated Plaintiff Jenkins' claims prior to filing the FAC; worked with both Parties' experts to determine the cause of the Cyber Security Event; engaged in informal written discovery; and attended a full-day mediation with counsel for Defendant. Federman Dec., ¶32, **Ex. 1**. During mediation, which was facilitated by an experienced mediator, Class Counsel worked alongside Defendant to arrive at settlement terms that would confer a significant benefit to the Class despite the inherent risks to the Class of continuing litigation.

### iv. The Requested Fee and Expense Award Would Result in a Multiplier of approximately 1.59, Which is Extremely Modest and Reasonable

The total amount of attorneys' fees and expenses incurred and service awards sought by Class Counsel in connection with the prosecution of this action is $220,806.40,[5] not including time spent preparing this application for attorneys' fees and not including hours, if any, reduced or excluded in the exercise of billing judgment. *Id.*, ¶33, **Ex. 1**. Thus, the requested award of $350,000.00 represents a very measured multiplier of 1.59 times Class Counsel's cumulative lodestar.

As discussed, a multiplier would be appropriate here given the excellent results Class Counsel obtained, the speed with which a resolution was reached and the risk of non-payment Class Counsel faced. In *Vizcaino*, *supra*, the trial court surveyed a number of common cases to find "a [multiplier] range of 0.6–19.6, with most . . . from   1.0–4.0[.]" 290 F.3d at 1051 n. 6; *see also* 3 Newberg § 14.03 at 14-5 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

Here, however, to arrive at a total fee and expense award in the amount of $350,000.00 (the amount for attorneys' fees, reimbursement for expenses, and Plaintiffs' service awards sought by

---

[5]  Of this amount, $199,764.45 are Class Counsel's attorneys' fees, $16,041.95 are litigation expenses, and $5,000.00 is the total for both Plaintiffs' service awards sought.

Class Counsel), Class Counsel would be awarded a multiplier of approximately 1.59, which is extremely modest when compared with multipliers approved in other complex cases. *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 1995) (upholding an award of 25% of the fund that resulted in a multiplier of approximately 5.2, citing precedent for awards "in this range or higher"); *Vizcaino*, 290 F.3d at 1051 & Appendix (approving a multiplier of 3.65 and citing multipliers up to 19.6); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("'In recent years multipliers of between 3 and 4.5 have become common.'") (internal citations omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (finding that "a modest multiplier of 4.65 is fair and reasonable").

The comparatively small 1.59 multiplier requested here will be reduced by the work Class Counsel will continue to provide on behalf of the Class.  Indeed, this multiplier does not reflect the hours Class Counsel will spend preparing for and attending the final approval hearing, nor does it include additional services that Class Counsel will continue to provide through final approval and beyond, including overseeing the Settlement Administrator's review of claims as needed, answering Class members' questions as needed, and supervising the distribution of Settlement benefits as needed.  The multiplier will at least partially, if not largely, be consumed by this remaining work.

Considering the favorable result achieved here by Class Counsel, that Class Counsel's lodestar is decidedly reasonable when viewed against lodestars awarded in comparable actions, and the fact that the award of fees and reimbursement of expenses will in no way diminish the benefits provided to Class members, Plaintiffs respectfully submit that approving the $350,000.00 fee and expense request is appropriate and warranted.

       ii.       **The Fee Award Requested is Reasonable Under a Percentage of Recovery Analysis**

"In cases in which the class benefit can be monetized with a reasonable degree of certainty, a percentage of the benefit approach may be used to cross-check the lodestar calculation." *Hartless*, *supra*, 273 F.R.D. at 642. "Just as the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate, the percentage-of-recovery method can

likewise be used to assure that counsel's fee does not dwarf class recovery." *In re Bluetooth Headset Prods. Liab. Litig.*, *supra*, 654 F.3d at 945 (internal quotations and citations omitted). Though the lodestar method is an appropriate means of calculating an awarded fee, the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *Id.* at 944.

In the Ninth Circuit, courts apply the factors in *Vizcaino*, *supra*, to assess the reasonableness of an attorney fee, measured as a percentage of a common fund. 290 F.3d at 1048–50. The *Vizcaino* factors include: (1) the results achieved for the Class and whether they were exceptional; (2) the risk of the litigation; (3) benefits that exceed a cash fund; (4) standard contingency fees for similar common fund cases of comparable size; and (5) the burden of taking the matter on a contingency basis, including the extended nature of a case, the expense required, and the need to forgo other work during the pendency of the matter, all of which tend to reduce a firm's annual income. *See id.* at 1048–50. Here, the *Vizcaino* factors offer a helpful framework that justifies attorney fees, measured well below the total potential value of the settlement.

### A.    Exceptional Results for the Class

As discussed above, Class Counsel achieved a significant and valuable result for the Class, especially given the uncertainties related to class action data breach litigation. As briefed more fully in Plaintiffs' Motion for Preliminary Approval, the inherent risks of continuing litigation (e.g., obtaining class certification and surviving a motion for summary judgment and any subsequent appeal,  all while Plaintiffs and Settlement Class members are all left without any recovery for their injuries) outweigh any potential benefit to continuing litigation. Instead, Settlement Class members will now have access to immediate relief.

### B.    Risk of the Litigation

As discussed above, had the Parties not agreed to the Settlement, continued litigation presented significant risk of no – or delayed – recovery to the Class. Risks of continued litigation include (1) obtaining class certification in an uncertain landscape; (2) surviving any dispositive motions; (3) no confirmation of change of business practices by Defendant, potentially leaving

1    Plaintiffs' and Class members' Personal Information exposed; (4) additional fees and expenses

2    incurred on experts and time devoted litigating the Action; and (5) no immediate monetary or

3    injunctive relief available to Plaintiffs.

### C.    Benefits of Settlement Beyond the (Potential) Settlement Fund

4
5
6    As more fully briefed in Plaintiffs' Motion for Preliminary Approval, the total *potential*

7    value of the settlement totals well over $300 million. However, given the typical claims rate in class

8    actions (anywhere from 2-5%), the total amount expended by Defendant will, most likely, be much

9    less than that. Because the Parties were able to reach a Settlement prior to seeking class certification,

10   Plaintiffs did not retain a damages expert.

11   The Settlement is exceptional in that it provides significant cash payments to Settlement

12   Class members, both for time and money expended in response to the Cyber Security Event. The

13   Settlement Class members are known to Defendant, which has provided their information to the

14   Settlement Administrator. Thus, there is no need for Settlement Class members to spend time

15   seeking out information related to the Settlement; information on how to participate in the

16   Settlement will be sent directly to Settlement Class members. The claims process that was granted

17   preliminary approval by this Court provides multiple straightforward, easy-to-understand methods

18   for Settlement Class members to obtain relief (e.g., by mail or online).

19

20   Moreover, as discussed *supra*, Settlement Class members also have the ability to extend or

21   enroll in credit monitoring, which is fully funded by Defendant. Additionally, Defendant has made

22   multiple assurances regarding implementing business practices to better protect Settlement Class

23   members' Personal Information going forward.

24   The ease with which Settlement Class members can seek relief from the Cyber Security

25   Event, the ability to enroll in credit monitoring, and the business practice changes implemented by

26   Defendant all benefit the Class beyond the (potential) cash settlement fund.

### D.    Standard Contingency Fees For Similar Cases

27
28   "A leading authority recognizes that '[e]mpirical studies show that . . . fee awards in class

---

20

actions average around one-third of the recovery." *Hershey v. ExxonMobil Oil Corp.*, 2012 U.S. Dist. LEXIS 153803, *21–22 (D. Kan. Oct. 26, 2012) (citing 4 H. Newberg & A. Conte, *Newberg on Class Actions*, § 14:6 (4th ed. 2006). As noted in *Barbosa, supra,* 297 F.R.D. at 448:

> The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage…The exact percentage awarded, however, varies depending on the facts of the case, and "in most common fund cases, the award exceeds that benchmark" percentage…nearly all common fund awards range around 30%.

(internal citations omitted).

One-third to 40% contingency retainers are typical in the rest of the country. *E.g., Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (approving 40% contractual award if case went to trial); *Alpine Pharmacy v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1051 (2d Cir. 1973) (approving 32% attorney fee recovery for settlement before trial); *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43 (3d Cir. 1987) (finding one-third contingent fee reasonable).

Here, Class Counsel is seeking far less than 25% - let alone 33% - of the total *potential* value of the settlement, which is well over $300 million.[6] Indeed, 25% of $2.4 million (the total amount if the entire Class claims $80.00 in time spent) is $600,000.00.[7] Class Counsel seeks far less than $600,000.00. Further, Class Counsel bases their fee request on the injunctive relief and other non-monetary relief obtained for the Class, which is explained in more detail *supra*.[8] Given typical claims rates of class action cases, discussed more *supra*, one may reasonably assume this action may have a claims rate of 4%. 4% of the Settlement Class is approximately 1,229

---

[6] This figure is based upon if 30,000 Settlement Class Members are all compensated for $10,000.00 for out-of-pocket losses attributed to the Cyber Security Incident. Ex. 1, ¶40. (Doc. No. 36-1).
[7] Given low claims rates, the Settlement may total approximately $2 million. 25% of $2 million is $500,000, and Class Counsel seeks far less.
[8] The cost of the identity theft protection offered by Artech is approximately $15.00 per year if 1,500 individuals enrolled.

individuals. If 1,299 individuals claim $285 (potentially $80 (the maximum for time lost) and $205 in out-of-pocket losses), that is approximately Class Counsel's request for attorneys' fees.

### E.      Burden on Class Counsel

Finally, Class Counsel took on the burden of investing a significant amount of contingent labor and contingent costs into this matter, which necessarily means fewer resources available for other work in the meantime. Through settlement implementation, Class Counsel's timekeepers will have put at least 346 hours into litigating this case. Class Counsel also incurred more than $16,041.95 in costs, taking a financial risk in the event of a loss on any number of critical issues litigated during the pendency of the case. Federman Dec., ¶34, **Ex. 1**.  Class Counsel incurred *all* of this labor and *all* of these costs on a contingency basis, with no guarantee of any recovery, and at a great cost to their practices, since Class Counsel could have invested that time and money into other matters.

### v.      The Absence of Collusion Between the Settling Parties Further Supports the Requested Fee Award

As the Court appropriately noted in its Preliminary Approval Order, district courts must determine whether the settlement is, among other things, free of collusion. Preliminary Approval Order, p. 9 (Doc. No. 43). The lack of collusion here, along with the arm's-length negotiations used to reach the Settlement terms, support a finding that there was no collusion between the Parties' counsel and weighs in favor of approving the requested fee award.

First, Class Counsel's fees and expense reimbursement, including service awards for the Plaintiffs, if any, will be paid separate and apart from any relief paid to the Settlement Class. Federman Dec., ¶35, **Ex. 1**.  Second, the Settlement is non-reversionary; there is no possibility of any possible settlement funds being diverted back to Defendant. Finally, it is evident that the Settlement is not the result of collusion and that the requested fee award is not to the detriment of the Class. The Settlement is the result of one full-day mediation session with an experienced mediator. *Id.*, ¶36, **Ex. 1**.

### V.      THE EXPENSES REQUEST IS REASONABLE

Expense reimbursement awards "should be limited to typical out-of-pocket expenses that are

22

charged to a fee-paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Such reasonable and necessary expenses include the following: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees." *In re Immune Response Sec. Litig*, 497 F. Supp. 2d at 1177.

To date, Class Counsel have incurred $16,041.95 in unreimbursed litigation costs on a contingency basis, described more *supra*. Federman Dec., ¶34, **Ex. 1**. Given the uncertainties with taking on a case of this magnitude in an unsettled part of law, Class Counsel incurred these costs to litigate successfully on the Class's behalf, taking a financial risk in the event of a loss on any number of critical issues. These costs were incurred for the Class's benefit. *Id.*

Because the costs incurred in the Action are reasonable, Class Counsel respectfully requests that the Court award $16,041.95 in litigation costs reimbursements, to be paid as part of the total fee and expense award sought by Class Counsel totaling $350,000.00.

## VI.   THE NAMED PLAINTIFFS SHOULD BE AWARDED SERVICE AWARDS

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted). Service awards of as much as $5,000 for each plaintiff have been found "presumptively reasonable" throughout the Ninth Circuit. *See e.g., Pauley v. Cf Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 U.S. Dist. LEXIS 187614, at *9 (C.D. Cal. July 23, 2020).

The Court should approve modest service awards here of $2,500.00 to each of the two Named Plaintiffs. As described in their declarations, the Named Plaintiffs spent considerable time throughout the litigation fulfilling their responsibilities as plaintiffs and class representatives. *See* Declarations of Plaintiffs Brigid Poling and Dwight Jenkins, **Exhibits 2** and **3**, respectively, attached hereto. The amounts requested here are smaller than previous service awards awarded by the Court. *See, e.g. Villafan v. Broadspectrum Downstream Services, Inc.*, Case No. 3:18-cv-06741-LB (Doc.

1   No. 150, filed April 8, 2021) (awarding the named plaintiff $10,000.00); *see also*, *Harrison, et al.*

2   *v. Bank of America Corporation*, Case No. 3:19-cv-02491-LB (Doc. No. 90, filed November 24,

3   2021) (awarding the named plaintiffs $7,5000.00 each). The service awards requested here are also

4   below this District's presumptive award of $5,000.00 each. Additionally, the Service Awards

5   granted by the Court, if any, will not be paid from funds available to Class but will be deducted from

6   Class Counsel's sought fee award of $350,000.00.

7   **VII.    CONCLUSION**

8          For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant

9   motion for entry of an Order approving Class Counsel's request for: (i) an attorneys' fees award and

10  reimbursement for expenses in the amount of $350,000.00 (which includes the awards sought for

11  the Named Plaintiffs); and (ii) payment of service awards of $2,500.00 to each of the Named

12  Plaintiffs.

13

14  DATED: December 3, 2021          Respectfully submitted,

15

16                                  */s/Robert S. Green*_____
                                    Robert S. Green (State Bar No. 136183)

17
                                    James Robert Noblin (State Bar No. 114442)
18                                  Evan M. Sumer (State Bar No. 329181)
                                    **GREEN & NOBLIN, P.C.**
19                                  2200 Larkspur Landing Circle, Suite 101
                                    Larkspur, CA 94939
20                                  Telephone: (415) 477-6700
                                    Facsimile: (415) 477-6710
21                                  Email: gnecf@classcounsel.com

22                                  William B. Federman*
                                    *wbf@federmanlaw.com*
23                                  Oklahoma Bar No. 2853
                                    **FEDERMAN & SHERWOOD**
24                                  10205 N. Pennsylvania Ave.
                                    Oklahoma City, OK 73120
25                                  Telephone: (405) 235-1560
                                    Facsimile: (405) 239-2112
26

27                                  *Admitted pro hac vice*

28

---
24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cornelius P. Dukelow**
*cdukelow@abingtonlaw.com*
Oklahoma Bar No. 19086
**ABINGTON COLE + ELLERY**
320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)

***pro hac vice application forthcoming*

*Counsel for Plaintiffs and the Proposed Class*