JOSEPH J. MINIOZA, SBN 197379
JESSE A. BOYD, SBN 254894
LINDA N. HWEE, SBN 246023
ERICKSEN ARBUTHNOT
2300 Clayton Road, Suite 350
Concord, California 94520
Telephone: (510) 832-7770
Facsimile: (510) 832-0102
jminioza@ericksenarbuthnot.com
jboyd@ericksenarbuthnot.com
lhwee@ericksenarbuthnot.com

Attorneys for Defendant,
ARTECH, L.L.C.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIGID POLING, et al., individually and on behalf of all others similarly situated and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>ARTECH L.L.C.,<br><br>Defendant. | Case No.: 3:20-cv-07630-LB<br><br>**NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: February 10, 2022<br>Time: 9:30 a.m.<br>Location: Courtroom B<br>450 Golden Gate Avenue, 15th Floor<br>San Francisco, California 94102<br>Judge: Hon. Laurel Beeler |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

NOTICE OF JOINT MOTION AND MOTION ...................................................... v

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

     A.    The Parties ............................................................. 2

     B.    Factual Background .................................................... 3

     C.    Procedural Background ................................................. 3

III.  TERMS OF THE SETTLEMENT ................................................... 5

     A.    Definition of the Settlement Class ...................................... 5

     B.    Settlement Benefits ..................................................... 6

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED AS PART OF APPROVAL OF THE SETTLEMENT AGREEMENT .................... 11

     A.    The Class is Sufficiently Numerous .................................... 11

     B.    The Commonality Requirement Is Met ................................. 11

     C.    The Typicality Requirement is Met .................................... 12

     D.    The Adequacy Requirement is Met ..................................... 12

     E.    The Settlement Class Satisfies the Predominance Test Under Rule 23(b)(3) .............................................................. 13

V.    THE SETTLEMENT AGREEMENT SHOULD BE APPROVED .............. 15

A.  Strength of Plaintiffs' Case ................................................. 16

B.  Risk, Expense, Complexity, and Likely Duration of Further
    Litigation ........................................................................... 16

C.  Risk of Maintaining Class-Action Status Throughout Trial ............. 17

D.  Amount Offered in Settlement ........................................... 17

E.  Discovery and Investigation Completed Before Settlement ............. 17

F.  Experience and Views of Counsel ..................................... 18

G.  The Presence of a Government Participant ....................... 19

H.  Reaction of Class Members to the Proposed Settlement ................. 19

VI. OTHER MATTERS RELEVANT TO APPROVAL DETERMINATION ... 22

A.  Proposed Class Representative Service Awards ............................... 22

B.  Class Counsel's Attorneys' Fees, Costs, Expenses........................... 23

VII.        CONCLUSION ....................................................... 24

1
2

## **TABLE OF AUTHORITIES**

**Cases**

3 *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ....................................................14

4 *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) ...........................................................12

5 *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ...........................22

6 *Bennett v. Behring Corp.*, 737 F.2d 982, 988 (11th Cir. 1984) ................................................20

7 *Boyle v. Arnold-Williams*, No. C01-5687JKA, 2006 U.S. Dist. Lexis 91920, *10-11 (W.D. Wash. Dec. 20, 2006)...........................................................................................................21

8 *Browning v. Yahoo! Inc.*, No. 04-CV-01463-HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) .................................................................................................................16

9 *Californians for Disability Rights, Inc. v. Cal. DOT*, No. C 06-5125 SBA, 2010 U.S. Dist. LEXIS 62837, 2010 WL 2228531, *2 (N.D. Cal. June 2, 2010)............................................20

10 *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1013 (E.D. Cal. May 8, 2019).................20

11 *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575, 577 (9th Cir. 2004)....................15, 20

12 *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ...................11

13 *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018) ..........................................16

14 *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 556 .....................11

15 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ...............................................13

16 *Hughes v. Microsoft Corp.*, No. 98-CV-01646, 2001 WL 34089697, at *1, *8 (W.D. Wash. Mar. 26, 2001).............................................................................................................20

17 *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) .........................15

18 *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008)..............................................15

19 *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) ...............................23

20 *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-MD-02522-PAM, 2017 U.S. Dist. LEXIS 75455, 2017 WL 2178306, at *9 (D. Minn. May 17, 2017).........................19

21 *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 U.S. Dist. LEXIS 200113, 2016 WL 6902351 .............................................19

22 *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) .............................................................16

23 *Knapp v. Art*, 283 F. Supp. 3d 823, 833-834 (N.D. Cal. 2017) .................................................20

24
25
26
27
28

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ................................................................................................................14

*Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 WL 423860 at *5 (N.D. Cal. Feb. 8, 2012) .......................................................................................................18

*Rosado v. Eay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016) ........................................................................................................................................23

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990) ...........17

*Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) ...........................................................12

*Sugarman v. Ducati N. Am., Inc.*, No. 10-CV-05246-JF, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) ...............................................................................................................................20

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ......................................15

*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) .........................14

*Wortman v. Air New Zealand*, 326 F.R.D. 549, 561 (N.D. Cal. 2018) ........................................14

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) .......................14

**Other Authorities**

FED. R. CIV. P. 23(a) ...................................................................................................................11

Fed. R. Civ. P. 23(a)(2) .............................................................................................................11

Fed. R. Civ. P. 23(a)(3) .............................................................................................................12

Fed. R. Civ. P. 23(a)(4) .............................................................................................................12

Fed. R. Civ. P. 23(b)(3) ...............................................................................................5, 11, 13

Fed. R. Civ. P. 23(b)(3)(A)–(D) .................................................................................................14

Fed. R. Civ. P. 23(e)(2) .............................................................................................................10

FED. R. CIV. P., Rule 23(e)(5)(A) ................................................................................................21

**NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

CASE NO. 3:20-cv-07630-LB                                                                              Page iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTIC OF JOINT MOTION AND MOTION TO APPROVE
## CLASS ACTION SETTLEMENT

**TO ALL PARTIES, THEIR ATTORNEYS OF RECORD, AND ALL OTHER INTERESTED PERSONS: PLEASE TAKE NOTICE THAT** on February 10, 2022 at 9:30 a.m. in Courtroom B, 15th Floor, of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or at such other time or place as may be set by the Court, the Honorable Magistrate Judge Laurel Beeler presiding, provisionally appointed class representatives and Plaintiffs Brigid Poling and Dwight Jenkins and Defendant Artech, LLC (collectively the "Parties) will and hereby do jointly move for entry of an Order finally approving the class-action Settlement Agreement and Release ("Settlement Agreement") filed herewith and previously in the above-captioned action at ECF No. 36-1 and ECF No. 45. Good cause exists for granting final approval of the Settlement Agreement in that it is fair, reasonable, and adequate. The motion is presented jointly and will be based on this Notice, the Memorandum of Points & Authorities below, the declarations and filings cited therein and/or filed herewith, the records on file in this action, and any additional arguments or evidence the Court may allow or request at or before hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.       INTRODUCTION

With this motion, provisionally appointed class representatives Brigid Poling and Dwight Jenkins ("Plaintiffs") and Defendant Artech, LLC ("Defendant" or "Artech") (collectively the "Parties") seek final approval of a settlement resolving the conditionally-certified class action against Artech.  The underlying lawsuit involves a putative class of 30,711 current, former, and potential employees whose personally identifiable information ("PII" or "Personal Information") may have been accessible when unknown third-party criminal actors gained unauthorized access to Artech computer systems between January 5, 2020 and January 8, 2020 (the "Cyber Security Event").  Expert forensic analysis conducted after the Cyber Security Event did not reveal evidence that PII of any class member was accessed or removed from Artech's systems by the threat actors.  Information from the forensic analysis was exchanged and assessed by the Parties and their experts prior to mediation.

The Parties had a lengthy mediation with the Honorable Judge Edward A. Infante, a respected mediator and retired judge, and ultimately accepted his mediator's proposal and came to an agreement on the majority of the settlement terms on June 28, 2021 (and agreed on the remaining settlement terms shortly after).  The settlement agreement that resulted ("Settlement Agreement" or "Settlement"[1]) was preliminarily approved by the Court on September 30, 2021. (ECF No. 43).  The Preliminary Approval Order appointed KCC Class Action Services, LLC ("KCC" or "Settlement Administrator") as the third-party administrator and provisionally appointed Plaintiffs as class representatives and Federman and Sherwood as Class Counsel.

///

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement and Release, attached as Exhibit 1 to Plaintiffs' Motion for Preliminary Approval of Settlement (*see* ECF No. 36-1).

Since being appointed, KCC has successfully sent notices to approximately 99.4% of Settlement Class Members and provided government officials notice as required under the Class Action Fairness Act.  *See* Declaration of Alex Thomas ("Thomas Dec."), attached hereto as Exhibit A, at ¶¶2, 3 and Exhibit C thereto (total notices sent versus 166 returned as undeliverable). To date, 636 claims (2.07% of the total class) have been made by Settlement Class Members, no Settlement Class Member has opted out, and only one objection to the settlement has been filed.[2] *Id*.

As outlined below, the proposed Settlement Agreement remains fair, reasonable, and adequate as explained in Plaintiffs' Motion for Preliminary Approval (ECF No. 36), which is incorporated herein by reference, and the Court's resulting order.  There have been no substantive changes in circumstance since the Preliminary Approval Order was entered, and its terms have been met.  The Parties therefore respectfully request the Court give final approval to the Settlement Agreement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  <u>The Parties</u>

Defendant Artech is a workforce solutions company providing managed services, contingent labor, staff augmentation, IT consulting, project outsourcing, and statement of work services across multiple industries, including systems integration, banking and finance, telecommunications, pharmaceutical and life sciences, energy, healthcare, technology, transportation, and local and federal government agencies.  See First Amended Class Action Complaint, ECF No. 31 at ¶1. Plaintiffs and others similarly situated represent a putative class of 30,711 individuals whose Personal Information may have been accessible when unknown third-party criminal actors gained unauthorized access to an Artech's computer systems as outlined below.

---

[2] Class Counsel contacted the objector and left a voicemail on December 30, 2021, but has not received a call back.

## B. Factual Background

As outlined in the approved Notice of Artech, LLC Cyber Security Event Class Action Settlement (ECF No. 36-3), which has now been provided to Class Members by KCC, beginning on January 5, 2020 and lasting until January 8, 2020 unauthorized third parties gained access to certain Artech information systems with the apparent intent of conducting a ransomware attack (the "Cyber Security Event"). Within six hours after the Cyber Security Event was detected by Artech IT personnel on January 8, 2020, all Artech information systems were shut down, and critical systems were rebuilt from uncorrupted backup data, which terminated the unauthorized third-parties' ability to access Artech's systems. Along with a large volume of other data, the systems affected by the Cyber Security Event contained a number of files with Personal Information associated with approximately 30,000 current and former Artech employees. Subsequent third-party forensic analysis did not reveal evidence that the files containing Personal Information were opened, accessed, or downloaded from Artech's systems, and Artech has not been made aware of any such evidence to date; however, the files containing Personal Information were accessible to the unauthorized third parties during the Cyber Security Event.  On or about September 4, 2020, Artech began notifying individuals, including Plaintiffs and other Class Members of the Cyber Security Event.  See FAC, ECF No. 31 at ¶2.

## C. Procedural Background

### 1. Pleadings

The original class action complaint was filed on October 29, 2020 asserting claims for (1) negligence; (2) invasion of privacy; (3) unjust enrichment; (4) breach of fiduciary duty; (5) breach of confidence; (6) breach of implied contract; (7) breach of the implied covenant of good faith and fair dealing; (8) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210; (9) violations of the California Customer Records Act, Cal. Civ. Code §§ 1798.80–1798.84; (10) violations of California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100–1798.199.100; and (11) a request for injunctive and declaratory relief to secure their

data and fix Artech's data security vulnerabilities (ECF No. 1). On July 16, 2021, Plaintiffs filed their First Amended Class Action Complaint adding Dwight Jenkins as a named plaintiff (ECF No. 31). In lieu of Artech answering or filing motions in response to Plaintiffs' claims, the Parties agreed to participate in informal discovery and mediation.

### 2. Informal Discovery

The Parties engaged in extensive informal discovery leading up to mediation and Settlement. The Parties had ongoing written and oral communications to address the information and exchanged documents critical for a meaningful mediation, which Artech provided. Declaration of William B. Federman in Support of Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Proposed Settlement and Memorandum of Points and Authorities in Support Thereof ("Federman Dec."), ECF No. 36-2 at ¶6. Plaintiffs engaged cyber security experts who were involved in drafting and submitting to Artech informal requests for information and production of documents. *Id.* ¶7. The individual Plaintiffs worked diligently with their counsel to provide documents and information necessary to aid the Class in furtherance of settlement negotiations. *Id.* ¶8.

The Parties held a global meeting before the mediation, which included both Parties' experts, to engage in a discussion regarding the Cyber Security Event and to assess and opine on the impact of the Cyber Security Event on both the Class Members and Artech. This meeting proved useful in informing Class Counsel on settlement discussions. *Id.* ¶6.

### 3. Mediation and Settlement

In anticipation of the scheduled mediation date of June 28, 2021, Plaintiffs sent a detailed demand letter to Artech, setting forth a proposed settlement structure to guide negotiations. *Id.* ¶11. On June 28, 2021, after a full day of mediation with Judge Edward A. Infante (Ret.) and arm's length negotiations, the Parties agreed to most of the settlement terms. *Id.* ¶12. Arm's-length negotiations continued over the following days to address the remaining issues until an agreement was reached on all issues that comprise the Settlement Agreement. *Id.*

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                                                 Page 4

### 4. Preliminary Approval of Settlement

On August 5, 2021 Plaintiffs filed their Notice of Motion and Motion for Preliminary Approval of Proposed Settlement and supporting papers (ECF No. 36).  The Court issued an order granting that motion on September 30, 2021 (ECF No. 43).  Upon stipulation of the Parties the Court amended the deadlines related to the Procedures for Final Approval Hearing on October 29, 2021 (ECF No. 47), and December 15, 2021 (ECF No. 51) with the hearing on this motion and final approval ultimately set for February 10, 2022.

## III.  TERMS OF THE SETTLEMENT

Though it has been filed previously (ECF No. 36-1, ECF No. 45), for the convenience of the Court, the Parties, Class Members, and other interested persons, the Settlement Agreement is attached hereto as Exhibit B.

### A. Definition of the Settlement Class

Should the instant motion be granted, the Parties seek certification of the putative Settlement Class for settlement purposes only pursuant to Fed. R. Civ. Proc. 23(b)(3), with a right of opt-out pursuant to the Court's orders granting preliminary approval and adjusting procedures for final approval (ECF No. 43; ECF No. 47; and ECF No. 51).

The Settlement Class is defined as

> all persons in the United States and Overseas Military identified on the Settlement Class List, including all individuals who were sent notification by Artech that their Personal Information may have been accessible during the Cyber Security Event.  Excluded from the Settlement Class are (i) Defendant's trustees, administrators, and attorneys; (ii) all Settlement Class Members who timely and validly request exclusion from and opt-out of the Settlement Class; (iii) the Magistrate Judge to whom the action is assigned and any member of the Magistrate Judge's staff or immediate family members; (iv) any members or employees of defense counsel; and (v) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Cyber Security Event or who pleads nolo contendere to any such charge.

Settlement Agreement at ¶31.  The final Settlement Class List, and therefore the Settlement Class, is comprised of 30,711 individuals.[3]  *See* KCC Weekly Claims Report, January 5, 2022, attached as Exhibit C to Thomas Dec.

The Settlement Agreement includes all persons whose Personal Information was accessible to third parties during the Cyber Security Event regardless of the state in which they reside, or if they are serving in the military overseas.  Thus, the notice plan provides notice and access to benefits for the greatest possible number of individuals that may have been affected by the Cyber Security Event.

### B.  Settlement Benefits

There is no aggregate cap on the amounts paid to Settlement Class Members submitting valid claims.  Unless they also submit a valid Request for Exclusion prior to the Claim Deadline, all Settlement Class Members that submit timely valid Claim Forms are "Participating Settlement Class Members."  In addition to credit monitoring and identity protection services, Participating Class Members may submit claims for compensation of lost time up to $80 and/or reimbursement of out-of-pocket expenses or losses up to a maximum of $10,000.00 as follows:

#### 1.  Credit Monitoring and Identity Protection Services

All Participating Settlement Class Members shall have until three (3) months following the Final Approval Hearing to request access or extension of their access to credit monitoring and identity protection services through Kroll paid for by Defendant for a period of three (3) years after their actual enrollment or the Claims Deadline, whichever is later.  Settlement Agreement at ¶38.

#### 2.  Tier One Compensation (Lost Time up to $80)

Tier One Compensation is available to Participating Class Members who, as of the time they submit their claim form, do not submit evidence to the Settlement Administrator that they

---

[3] Due to the inclusion of duplicate entries which were eliminated during settlement administration, Plaintiffs' Motion for Preliminary Approval indicated the Settlement Class to be comprised of 30,720 individuals.

experienced identity theft, fraud, or misuse of their information "fairly traceable" to the Cyber Security Event, but do provide documentation or attestation establishing more-likely-than-not (as determined by the Settlement Administrator) that they spent time addressing the Cyber Security Event. Tier One Compensation allows Participating Class Members to receive compensation for up to three hours of lost time at a rate of $26.67 per hour.  Compensable time under Tier One Compensation cannot exceed $80 and does not include time spent submitting claim forms. *Id*. at ¶39.

### 3. Tier Two Compensation (Reimbursement of Out-of-pocket Losses)

Tier Two Compensation is available (in addition to Tier One Compensation) to Participating Class Members who submit sufficient evidence as determined by the Settlement Administrator that they have suffered Out-of-pocket Losses as a result of identity theft or other fraud or misuse of their PII fairly traceable to the Cyber Security Event.  Submitted evidence supporting a Claim for Tier Two Compensation must establish to the satisfaction of the Settlement Administrator that:

**a.** The loss is an actual, documented, and unreimbursed monetary loss as shown by (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Participating Settlement Class Member that documents the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

**b.** The loss was more-likely-than-not caused by identity theft or other fraud or misuse of their Personal Information fairly traceable to the Cyber Security Event.

**c.** The loss occurred after January 5, 2020.

**d.** The Settlement Class Member made reasonable efforts to avoid or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                                                 Page 7

*Id.* at ¶40.

Under the Settlement Agreement, "Out-of-pocket Losses" are "documented out-of-pocket costs or expenditures that a Participating Settlement Class Member actually incurred between January 5, 2020 and the Notice Deadline that are fairly traceable to the Cyber Security Event, and that have not already been reimbursed by a third party." *Id.* at ¶22. A wide range of costs and expenditures qualify as Out-of-pocket Losses, including, without limitation,

> costs associated with credit monitoring or identity theft insurance purchased directly by the claimant, provided that the product was purchased primarily as a result of the Cyber Security Event; costs associated with requesting a credit report, provided that the claimant requested the report primarily as a result of the Cyber Security Event; costs associated with a credit freeze, provided that the claimant requested the freeze primarily as a result of the Cyber Security Event; costs associated with cancelling a payment card and/or obtaining a replacement payment card, provided that the claimant's request for the cancellation and/or replacement was primarily the result of the Cyber Security Event; costs associated with closing a bank account and/or opening a new bank account, provided that the claimant's request to close and/or open a bank account was primarily the result of the Cyber Security Event; postage, long-distance phone charges, express mail and other incidental expenses, provided that the claimant provides documentation of the charges and that they were fairly traceable to the Cyber Security Event; overdraft and/or overdraft protection fees, provided that the fees were incurred as a result of the Cyber Security Event; late and/or missed payment fees and/or charges, provided that the fees and/or charges were incurred as a result of the Cyber Security Event; the increase in interest on credit cards or other loans caused by a late or missed payment that was a result of the Cyber Security Event; and damage to credit and costs associated with a decreased credit score if fairly traceable to the Cyber Security Event.

*Id.*

Thus, under the Settlement Agreement, every Participating Class Member is entitled to receive three (3) years of credit monitoring and identity theft protection services. Where a Participating Class Member has not experienced identity theft, fraud or other misuse of their PII, they still may claim up to $80 in compensation for lost time fairly traceable to the Cyber Security Event. Finally, where submitted evidence establishes that a Participating Settlement Class Member did suffer identity theft, fraud, or other misuse of their Personal Information fairly

traceable to the Cyber Security Event, the Settlement Agreement offers an efficient mechanism to receive reimbursement of up to $10,000 for any resulting out-of-pocket expenditures. Importantly, there is no aggregate cap or concomitant possibility of reversion.   Procedural Guidance for Class Action Settlements, United States District Court for the Northern District of California ("Guidance"), available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last accessed Jan. 6, 2022), Item (1)(h).

### 4.   Injunctive Relief

Shortly after the Cyber Security Event, Artech engaged a third-party cybersecurity consultant to investigate the event and provide recommendations about how best to address it. With input from outside experts and the IT professionals it employs directly, Artech has agreed to continue, adopt and/or implement certain business practices and remedial measures ("Business Practice Commitments") for a period of at least three years following the Effective Date of the Settlement.  This includes the following:

a.   Artech has conducted baseline penetration testing through a well-established third-party IT security vendor, and will continue to conduct substantially-equivalent penetration testing at least annually.  Defendant has conducted annual penetration testing as outlined in this subparagraph for 2021, and will reauthorize sufficient funds in its IT budget for 2022 and each subsequent year through 2024 to utilize the same or any comparably-priced improved testing technology as may be available.

b.   Artech shall continue to ensure that anti-malware software resides on all its servers, and that its VPN appliance is updated as soon as practicable after security updates become available, but in no instance less often than monthly.

c.   Artech is implementing a company-wide encryption protocol wherein all Personal Information is segregated by its employees and encrypted daily.

d.   Artech is testing its IT security for NIST compliance, and has achieved compliance with many NIST requirements, with the remainder to be addressed through SIEM software.  Defendant will provide a declaration or certification of such compliance on or before December 21, 2022.

e.   Artech is currently evaluating several Security Information and Event

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                                                                     Page 9

Management ("SIEM") software options, and shall deploy SIEM software on or before December 31, 2022.

f.  Artech currently provides IT security and Personal Information training to all of its personnel during onboarding, and on a quarterly basis thereafter, which will continue.  This training includes directions about how to handle suspicious communications and documents and encourages personnel to report any concerns about Artech's information security systems.

g.  Artech has developed and implemented a formal written Personal Information policy, which it will continue to maintain with appropriate updates.

h.  Artech is developing a suite of testing and auditing tools through a third-party vendor designed to locate Personal Information located outside Artech's encrypted environment, which will be implemented on or before December 31, 2021.  Artech shall provide to the Court a certification from its third-party vendor that all Personal Information located during the auditing process has been either destroyed or moved to Artech's encrypted environment.

i.  Artech shall continue to provide employees and former employees a means requesting their Social Security numbers and dates of birth be deleted after such information is no longer needed to fulfill Artech's corporate mission, and will delete such information upon request.

Settlement Agreement at ¶51.

Thus, the Settlement Agreement confirms and ensures Artech's continued commitment to protect the PII contained on its systems.  It provides access to credit monitoring and identity protection services to all Participating Class Members.  In addition, it provides significant monetary relief to any who lost time fairly traceable to the Cyber Security Event or had out-of-pocket expenses caused by actual identity theft, fraud, or misuse of their PII fairly traceable to the Cyber Security Event.  There is no aggregate cap or possibility of reversion.  In short, the Parties respectfully submit that the Settlement Agreement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2), and should therefore be approved.

## 5.  Release by the Class

Upon the Effective Date, and in consideration of the Settlement benefits described in the Settlement Agreement and outlined above, each of the Settlement Class Representatives and

Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have released, acquitted, and forever discharged any and all Released Claims against Artech. *See* Settlement Agreement ¶68.  The Released Claims, as defined in the Settlement Agreement, encompass the claims pled by Plaintiffs in their FAC and all other claims related to the same nucleus of operative facts underlying the FAC. *See* Settlement Agreement at ¶¶26, 69.

## IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED AS PART OF APPROVAL OF THE SETTLEMENT AGREEMENT

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. FED. R. CIV. P. 23(a); *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 556. In addition, common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### A.   The Class is Sufficiently Numerous

Federal Rule of Civil Procedure 23(a)(1) numerosity is satisfied where the number of proposed class members is so numerous that joinder of all members is impracticable. Numerosity is presumed where the plaintiff class contains forty or more members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are 30,711 members of the Settlement Class, making joinder impractical, and satisfying the Rule 23 numerosity requirement.

### B.   The Commonality Requirement Is Met

Rule 23(a)(2) requires that the representative plaintiffs' claims contain "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Generally, "a few factual variations among

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                                    Page 11

the class grievances will not defeat commonality so long as class members' claims arise from "shared legal issues" or "a common core of salient facts." *Staton v. Boeing Co*., 327 F.3d 938, 953 (9th Cir. 2003).

Here, the claims of Plaintiffs and members of the Class all stem from the same Cyber Security Event. The common issues presented in this litigation include whether Artech failed to implement and maintain reasonable and adequate data security practices to safeguard the PII of Plaintiffs and the Class, the Cyber Security Event itself, whether Artech owed and breached any duty to Plaintiffs and the Class to keep their PII secure, and the types of damage caused by the Cyber Security Event.  Any potential differences in damages are addressed through the Settlement Agreement's tiered compensation approach.  Thus, common questions of law and fact predominate and this requirement is met.

**C.  The Typicality Requirement is Met**

Rule 23(a)(3) requires that the representative plaintiffs' claims and defenses are typical of those of the proposed class. Fed. R. Civ. P. 23(a)(3).  The representative plaintiffs' and proposed class members' injuries do not have to be identical, but it is required that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Here, the claims of Plaintiffs and those of the proposed Class arise from the same facts and circumstances surrounding the Cyber Security Event, and the same or similar legal theories, and thus, the typicality requirement is met. Again, variations in damages are addressed by the tiered compensation provided for in the Settlement Agreement.

**D.  The Adequacy Requirement is Met**

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement rests on two questions: whether the class representatives and their counsel (1) have any conflicts of interest with the

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                                                 Page 12

proposed class members; and (2) will prosecute the action vigorously on behalf of the class. *See Staton,* 327 F.3d at 957.

The adequacy requirement is satisfied here. Neither the proposed Class Representatives (Plaintiffs) nor Class Counsel have any conflicts with the absent Class members, as their claims are coextensive. *See* Federman Dec. at ¶29, ECF No. 36-2.  With regard to the second factor, the proposed Class Counsel is a highly qualified and experienced class action attorney, especially in the area of data breaches, consumer protection and complex litigation. *Id.* at ¶4. Finally, the proposed Class Representatives have been regularly involved in the litigation to-date, have provided information critical in negotiating the Settlement, have been in regular communication and will continue to be through the completion of the claims administration process. *Id.* at ¶24.

### E.  The Settlement Class Satisfies the Predominance Test Under Rule 23(b)(3)

In order to satisfy Federal Rule of Civil Procedure 23(a), at least one prong of Rule 23(b) must also be met. This is the predominance inquiry test which asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation and whether there is clear justification for handling the dispute on a representative rather than an individual basis. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Further, Rule 23(b) requires that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

When analyzing predominance, the Court looks at the common issues underlying the plaintiffs' individual claims. Here, the legal issues faced by members of the Class arise from the same set of facts surrounding the Cyber Security Event and thus mirror claims alleged by Plaintiffs. The facts and issues that support the commonality requirement discussed above overlap here as well. The commonalities such as the issues of duty and breach are one and the same between Plaintiffs and members of the Class. Resolution of Plaintiffs' claims would result in resolution of the issues of the Class. While damages may vary between Plaintiffs and individuals of the Class, because their damages all stem from Artech's actions that created the legal liability,

and the Settlement Agreement provides a tiered compensation approach. Plaintiffs have met the predominance test. *See e.g. Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (where the plaintiffs' damages stemming from defendant's actions creating legal liability was sufficient evidence to meet predominance requirement).

Plaintiffs are also able to show that class settlement is superior to other methods of litigation. To determine whether a class action is a superior method for resolving the litigation four factors are considered: "(1) the class members' interest in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation and of the claims in the particular forum, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D); *Wortman v. Air New Zealand*, 326 F.R.D. 549, 561 (N.D. Cal. 2018), *citing Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

The following facts support class action litigation here: (1) there are 30,711 individuals in the Settlement Class, all of whose PII was accessible during the Cyber Security Event, (2) Settlement Class members and Plaintiffs have similar, if not the same, legal claims stemming from the Cyber Security Event, (3) the Parties are unaware of litigation related to this case going on in any other forum, and (4) this particular forum is appropriate and convenient for Plaintiffs' claims to be litigated. Additionally, individual litigation of each Class Member's claims would be less efficient, not cost effective, and there are no other realistic alternatives. *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001). Since settlement-only certification is requested, Rule 23(b)(3)(D) does not require an analysis of manageability. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Finally, Artech has reserved its right to contest all claims made by Plaintiffs should the Settlement Agreement not be approved. In such a circumstance, Artech believes it has numerous strong defenses that would significantly limit the benefits available to the members of the class and lead

**NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

CASE NO. 3:20-cv-07630-LB                                                                 Page 14

to piecemeal litigation of claims with nominal, if any, value. *See* Declaration of Jesse A. Boyd, attached hereto as Exhibit C, at ¶¶5-7.

In the context of the proposed Settlement, the requirements of Rule 23 have been met. The Parties therefore request the proposed class be certified as part of the Final Approval process.[4]

## V.     THE SETTLEMENT AGREEMENT SHOULD BE APPROVED

In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement "is fundamentally fair, adequate and reasonable." *E.g. In re Heritage Bond Litig.,* 546 F.3d 667, 674–75 (9th Cir. 2008); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).

A district court should generally consider the following factors when making this determination:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011), *quoting Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004). When, as here, a proposed settlement is negotiated prior to formal class certification, courts must also scrutinize the agreement for "evidence of collusion or other conflicts of interest." *Id.* The Court preliminary finding that the Settlement is fair, adequate, and reasonable in light of these factors remains true for the purposes of final approval. *See* Preliminary Approval Order, ECF 43 at pp. 9-10.

/ / /

---

[4] Artech notes that in reserving all arguments and defenses those related to class certification will remain should the Settlement Agreement not be approved.

### A. __Strength of Plaintiffs' Case__

The Settlement reflects the strength of Plaintiffs' case as well as Defendant's position. Courts have noted that legal uncertainty supports approval of a settlement. *See e.g. Browning v. Yahoo! Inc.*, No. 04-CV-01463-HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). Data-breach litigation is in its infancy with threshold issues still playing out in the courts. In the past few years, both the Seventh and Ninth Circuits issued opinions addressing basic issues of standing in data-breach cases. *See In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018). Similarly here, Plaintiffs raise novel issues on topics such as damages. Plaintiffs' theories have not been tested beyond the pleading stage. Plaintiffs would also face strong opposition from Defendant. For example, a finding that Artech's security measures are inadequate is not a forgone conclusion, as Artech's existing security protocols and response to the breach may be found to have been up to industry standards. In addition, Artech has reserved all defenses and arguments and is prepared to vigorously defend the action should the Settlement Agreement not be approved. Boyd Dec. at ¶¶6-7. Thus, this factor weighs in favor of approval.

### B. __Risk, Expense, Complexity, and Likely Duration of Further Litigation__

The risks, expense, complexity, and likely duration of further litigation also support the Court's final approval of the Settlement. Any trial outcome would be subject to potential appeals, which at a minimum would have substantially delayed any recovery achieved for the class. *See* Federman Dec. at ¶28, ECF No. 36-2. The negative effects of delay are especially acute in this context because according to industry experts', the need for credit monitoring is most important for the five years following a data breach. Correspondingly, in order to effectively fortify the system against future breaches, it is imperative that Artech implement the security measures sooner rather than later. Taken together, these circumstances suggest that litigation would be

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                                                   Page 16

costly and uncertain and will detrimentally delay any potential relief for the Class. By contrast, the Settlement provides the Class with timely, certain, and meaningful benefits.

### C. **Risk of Maintaining Class-Action Status Throughout Trial**

There is a potential risk that Plaintiffs would not be able to maintain class-action status throughout trial. At the time of Settlement, the Court had not yet ruled on class certification. While there is no obvious reason to treat certification in a data-breach case differently than certification in other types of cases, the dearth of precedent makes continued litigation more risky. Due to the unsettled nature of the legal questions, Plaintiffs would likely have to contend with changing interpretations of procedural and substantive provisions throughout the course of the case. Additionally, trying the case may present certain manageability problems with regard to the calculation of individual damages under some of the proposed damages theories. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990). Although those concerns are not class-defeating in the settlement context, *Amchem*, 521 U.S. at 620, they would need to be considered if the case were to proceed to trial. These potential difficulties with maintaining class certification in this case counsel in favor of approving the settlement.

### D. **Amount Offered in Settlement**

The Settlement provides meaningful benefits and compensation to Participating Settlement Class Members. All are eligible for credit monitoring and identity protection services, and there is tiered compensation available for up to three (3) hours of lost time and up to $10,000 in reimbursement of out-of-pocket expenses upon proper showing. Importantly, there is no aggregate limit to the settlement fund. Finally, expert analysis shared between the Parties shows that there is minimal risk of financial harm as a result of the Cyber Security Event. In short, the amount offered in the settlement weighs heavily in favor of approval.

### E. **Discovery and Investigation Completed Before Settlement**

The Plaintiffs investigated their claims both prior to and after retaining counsel; participated in numerous conversations with counsel, answering many questions about

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                        Page 17

themselves, their experiences at Artech and as a result of the Cyber Security Event; reviewed the multiple complaints; provided documents responsive to informal discovery prior to mediation; and maintained regular communications with counsel to monitor the progress of the litigation including during the mediation. Federman Dec. at ¶24, ECF No. 36-2.  The named Plaintiffs have been diligent, pro-active Class Representatives.

The Parties engaged in rigorous and substantive informal discovery prior to mediation. This included Artech's sharing the results of its experts' forensic analysis of the Cyber Security Event.  *See id.* at ¶¶15, 16.  Artech's and Plaintiffs' experts then reviewed the available forensic data directly with each other.  Thus, the discovery and good-faith settlement discussions that took place between the Parties provided Class Counsel with an understanding of the strengths and weaknesses of Plaintiffs' case prior to the Parties' mediation with Judge Infante, which ultimately led to the Settlement Agreement now before the Court.  *See id.* at ¶¶6, 24, 43.  Thus, the discovery process prior to reaching Settlement supports its approval. *See e.g. Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 WL 423860 at *5 (N.D. Cal. Feb. 8, 2012) (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the parties conducted a significant amount of informal discovery…").

### F.  <u>Experience and Views of Counsel</u>

The views of Class Counsel weigh in favor of final approval. The Court appointed competent and experienced counsel who have done extensive work in all types of complex class actions. Federman Dec. at ¶4, ECF No. 36-2. Class Counsel are thus able to make educated assessments about the risks and possible recoveries in the current dispute. Plaintiffs' counsel endorses the Settlement as fair, adequate, and reasonable.

For their part, Artech's counsel have significant experience in defending like or similar claims to those asserted by Plaintiffs, including in the context of class actions. Boyd Dec. at ¶¶3-4.  While they are confident in their ability to successfully defend the case should it not be approved, Artech's counsel believe the Settlement Agreement represents an outcome that works

1    to the benefit of Plaintiffs, the Settlement Class Members, and Artech alike.  *Id*. at ¶8.  Thus,

2    they also endorse the Settlement as fair, adequate, and reasonable.

3        **G.  The Presence of a Government Participant**

4            To date, there is no government participant in this case. The Settlement Administrator has

5    provided governmental officials the requisite notice of the proposed settlement pursuant to the

6    Class Action Fairness Act, 28 U.S.C. § 1715.  *See* Thomas Dec. at ¶¶2, 3.  As of filing, none has

7    come forward with objections or complaints.

8        **H.  Reaction of Class Members to the Proposed Settlement**

9            **1.  Notice and Claims**

10           On September 30, 2021, the Court granted preliminary approval of the Settlement. ECF

11   No. 43.  The Court issued an Order Amending Procedures for Final Approval on October 29,

12   2021.  ECF No. 47.  Pursuant to those orders, on November 24, 2021, KCC mailed the Court-

13   approved notice to all 30,711 class members.  *See* KCC Weekly Claims Report, January 5, 2022,

14   attached as Exhibit C to Thomas Dec.  KCC also emailed the notice to 26,086 class members for

15   whom email addresses were available.  *Id*. To date, a total of 166 notices have been returned to

16   KCC as undeliverable.  *Id*.  Thus, approximately 99.4% of notices have been delivered without

17   being returned, which is excellent evidence of the quality of contact information contained in the

18   Settlement Class List provided by Artech to KCC.

19           As of January 5, 2022, 636 claims have been submitted by Settlement Class Members,

20   representing a claim rate of 2.07%.  While there are class-action settlements that have realized

21   higher claim rates, others have been approved with far lower rates.  *See e.g. In re The Home*

22   *Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 U.S. Dist.

23   LEXIS 200113, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016); *In re Target Corp. Customer*

24   *Data Sec. Breach Litig.*, No. 14-MD-02522-PAM, 2017 U.S. Dist. LEXIS 75455, 2017 WL

25   2178306, at *9 (D. Minn. May 17, 2017).  More importantly, Settlement Class Members have

26   until February 26, 2022 to file a claim, and additional claims are expected to be received before

27

28

then. Should the Court grant final approval, KCC's assessment of claims will proceed according to the Settlement Agreement and in consultation with Class Counsel and counsel for Artech to ensure Participating Settlement Class members receive the settlement benefits to which they are entitled under the Settlement Agreement.

### 2. Opt-outs and Objections

Low rates of objections and opt-outs are "indicia of the approval of the class." *Hughes v. Microsoft Corp.,* No. 98-CV-01646, 2001 WL 34089697, at *1, *8 (W.D. Wash. Mar. 26, 2001) (finding indicia of approval where nine out of 37,155 class members—or just over 0.02%—submitted objections and "less than 1%" opted out); *see also Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (affirming district court's approval of settlement where 45 of 90,000 class members—or 0.05%—objected to the settlement and 500 class members—or 0.56%—opted out); *Sugarman v. Ducati N. Am., Inc.*, No. 10-CV-05246-JF, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) (noting that objections from 42 of 38,774 class members—more than 0.1 percent—is a "positive response"). "The absence of a large number of objections to a class settlement raises a strong presumption that the terms of a propose class settlement action are favorable to the class members." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1013 (E.D. Cal. May 8, 2019). As such, "[a] court may properly infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Knapp v. Art*, 283 F. Supp. 3d 823, 833-834 (N.D. Cal. 2017).

When considering class members' objections, the district court evaluates whether they identify reasons why the proposed settlement may be unfair. *See Bennett v. Behring Corp.*, 737 F.2d 982, 988 (11th Cir. 1984) (affirming approval of a class settlement despite significant objections from class members because "the reasons for that opposition [were] thoroughly considered and ultimately rejected by the district court"); *Californians for Disability Rights, Inc. v. Cal. DOT*, No. C 06-5125 SBA, 2010 U.S. Dist. LEXIS 62837, 2010 WL 2228531, *2 (N.D. Cal. June 2, 2010) ("If objections are filed, the district court is to evaluate whether they suggest

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                    Page 20

serious reasons why the settlement proposal might be unfair"); *Boyle v. Arnold-Williams*, No. C01-5687JKA, 2006 U.S. D<small>IST</small>. L<small>EXIS</small> 91920, *10-11 (W.D. Wash. Dec. 20, 2006) ("[T]he fact that there is opposition does not necessitate disapproval of the settlement. Instead, the court must independently evaluate whether the objections being raised suggest serious reasons why the proposal might be unfair").

As of the filing of this Motion, out of the 30,711 putative Settlement Class Members, none have opted out.  Meanwhile, only one class member has filed an objection.

On December 28, 2021, Mr. Eric L. Howard filed a *pro se* objection directly with the Court.  *See* Objection to Settlement and Fee Application of Class Counsel ("Howard Objection"), ECF No. 52.  Mr. Howard's objection is slightly more than one page and does not meet the requirements of Rule 23(e)(5)(A), which states, "The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection."  F<small>ED</small>. R. C<small>IV</small>. P., Rule 23(e)(5)(A).  More importantly, it does not provide "serious reasons why the settlement proposal might be unfair."  *Californians for Disability Rights, Inc.,* 2010 U.S. Dist. LEXIS 62837, 2010 WL 2228531, at *2.

Mr. Howard fails to state if his objection applies to himself alone or some portion of the Class.  But even if the application of his objection can be inferred, the only statement he makes in support of his objection is, "Upon Artech's forensic investigation on January 15, 2020; it was determined an unauthorized actor accessed Artech's secured database between January 5, 2020 and January 8, 2020; and obtained class members' personal information including names and social security numbers."  Howard Objection at ¶ 2.[5]  From this he asserts that the "current proposal is not fair, reasonable, and/or adequate to redress the known or unknown harm the actual or attempted misuse of the class members' personal information…"  He does not present any

---

[5] As outlined in the Class Notice, the Parties are not aware of any evidence Settlement Class Members' PII was "obtained" during the Cyber Security Event, see ECF No. 36-3, and Mr. Howard does not supply any information to support his assertion that this occurred.

evidence or statement showing "known" harm or "actual or attempted" misuse.  In essence, Mr. Howard is asserting that there may be "unknown harm" stemming from the Cyber Security Event, and the Settlement is therefore not "fair, reasonable, and/or adequate."

Such speculation does not provide "serious reasons why the settlement proposal might be unfair."  Mr. Howard's objection asserts the "current proposal" is not fair, reasonable, and/or adequate to redress an unidentified "known or unknown" harm, but fails to state why. It further fails to state whether the objector has experienced any harm from the Cyber Security Event, whether the terms of the Settlement provided him adequate relief, or whether he has submitted a claim.

Regardless, the Settlement Agreement provides Mr. Howard and the other Settlement Class Members adequate remedy for the speculative "harm" to which Mr. Howard appears to be alluding.  The Settlement offers credit monitoring and identity protection services to all Participating Settlement Class Members thereby minimizing the risks associated with misuse of PII.  If Mr. Howard does not believe this protection to be sufficient, he has been, and as of filing continues to be, free to opt out of the Settlement.  His single objection should not preclude the other Settlement Class Members from receiving the protection and benefits provided for in the Settlement.

## VI.   OTHER MATTERS RELEVANT TO APPROVAL DETERMINATION

### A.   <u>Proposed Class Representative Service Awards</u>

The Parties agreed upon the amount of a reasonable service award to be paid to the named Plaintiffs after they reached an agreement on the terms of the settlement. Federman Dec., ¶23, ECF No. 36-2.   Artech does not oppose service awards of $2,500.00 to the two named Plaintiffs. *Id.* The service awards sought by Class Counsel are within the typical range. "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). Courts in the Northern District of California have found that a $5,000 incentive award is presumptively reasonable. *See*, *In re Linkedin User Privacy Litig.*,

NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. 3:20-cv-07630-LB                                                Page 22

309 F.R.D. 573, 592 (N.D. Cal. 2015); *Rosado v. Eay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016).  In addition, because the Settlement is not conditioned on the Court's approval of the full (or any) amount of a service award, the Settlement does not grant preferential treatment to Plaintiffs. Guidance, Item 7.

The Plaintiffs have been active Class Representatives. They investigated their claims both prior to and after retaining counsel; participated in numerous conversations with counsel, answering many questions about themselves, their experiences at Artech and as a result of the Cyber Security Event; reviewed the multiple complaints; provided documents responsive to informal discovery prior to mediation; and maintained regular communications with counsel to monitor the progress of the litigation including during the mediation. Federman Dec. at ¶24, ECF No 36-2. They also conferred with counsel regarding the terms of the Settlement Agreement. *Id.* The proposed $2,500.00 service award is consistent with or below those approved in other data breach class action settlements. *Id.* at ¶23.

### B.  Class Counsel's Attorneys' Fees, Costs, Expenses

The issue of Class Counsel's Attorneys' fees, costs and expenses is before the Court under separate motion (ECF No. 48), which motion and its supporting papers are incorporated herein by reference.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

VII.    **CONCLUSION**

For the reasons outlined above, the proposed Settlement is fair, reasonable, and adequate.  The Parties therefore respectfully request that the Court grant final approval.

DATED:  January 6, 2022                    **ERICKSEN ARBUTHNOT**

By: ___/s/ Jesse A. Boyd_____
Jesse A. Boyd
jboyd@ericksenarbuthnot.com

By: ___/s/ Linda N. Hwee_____
Linda N. Hwee
lhwee@ericksenarbuthnot.com

*Attorneys for Defendant Artech L.L.C.*

DATED:  January 6, 2022                    **FEDERMAN & SHERWOOD**

By: ___/s/ William B. Federman_____
William B. Federman
wbf@federmanlaw.com

*Counsel for Plaintiffs and*
*Conditional Class Counsel.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE
[Civil L.R. 5-5; 28 U.S.C. § 1746]

*Poling v. Artech, L.L.C.*

_____

I the undersigned, hereby declare that I am over the age of 18 years and not a party to the within action. I am employed in the County of Contra Costa, the County in which the following service occurred. My business address is 2300 Clayton Road, Suite 350, Concord, California, 94520.

On the date below, I caused a true copy of the following document(s) to be served in this action upon the person(s) set forth below, by the method indicated.

**DOCUMENT(S) SERVED:**   **NOTICE OF JOINT MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

PERSON(S) SERVED:
**Attorneys for Plaintiff**
Robert S. Green
James Robert Noblin
Evan M. Sumer
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Suite 101
Larkspur, California 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
gnecf@classcounsel.com

Cornelius P. Dukelow
ABINGTON COLE + ELLERY
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (telephone & facsimile)
cdukelow@abingtonlaw.com

William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**XX  CM/ECF ELECTRONIC FILING.** I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above in accordance with the rules governing the electronic filing of documents in the United States District Court for the Northern District of California.  A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of the electronic filing.  The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1).

I certify under penalty of perjury that the foregoing is true and correct.

Executed at Orinda, California on January 6, 2021.

By:    */s/ Jesse A. Boyd*