1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 San Francisco Division

11

| | |
|---|---|
| BRIGID POLING, on behalf of themselves and others similarly situated, | Case No. 20-cv-07630-LB |
| Plaintiff, | **ORDER GRANTING FINAL APPROVAL** |
| v. | Re: ECF Nos. 48, 53 |
| ARTECH, L.L.C., | |
| Defendant. | |

## INTRODUCTION

This is a putative class action under Federal Rule of Civil Procedure 23.[1] The plaintiffs are a class of individuals whose personal information was potentially compromised when a third-party gained unauthorized access to a server owned by the defendant, Artech, L.L.C. They sued Artech for negligence, invasion of privacy, and other violations of state law. The parties settled the case, and the court preliminarily approved the proposed settlement.[2] The parties jointly moved for final approval of the settlement. The court approves the settlement.

---

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 36.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**STATEMENT**

**1.  The Lawsuits**

The plaintiffs filed the lawsuit on October 29, 2020, and brought the following claims: (1) negligence; (2) invasion of privacy; (3) unjust enrichment; (4) breach of fiduciary duty; (5) breach of confidence; (6) breach of implied contract; (7) breach of the implied covenant of good faith and fair dealing; (8) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210; (9) violations of the California Customer Records Act, Cal. Civ. Code §§ 1798.80– 1798.84; (10) violations of California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100– 1798.199.100; and (11) a request for injunctive and declaratory relief to secure their data and fix Artech's data security vulnerabilities.[3]

The parties engaged in informal discovery and then agreed to mediation. To prepare for it, the plaintiffs sent a detailed settlement demand to Artech, setting forth a proposed settlement structure to guide their negotiations. The parties had a lengthy mediation with the Honorable Judge Edward A. Infante, a respected mediator and retired judge, and ultimately accepted his mediator's proposal and settled the majority of the claims on June 28, 2021 (and settled the remaining claims shortly after).[4] As part of the settlement, they agreed to the filing of a first amended complaint, which added a North Carolina subclass.[5] Following the plaintiff's unopposed motion and a hearing, the court preliminarily approved the settlement.[6] The plaintiff moved for final approval of the settlement and attorney's fees and costs.[7] The court held a fairness hearing on February 10, 2022.

---

[3] Compl. – ECF No. 1 at 20–37.

[4] Federman Decl. – ECF No. 36-2 at 4–5 (¶¶ 11–12).

[5] First Am. Compl. – ECF No. 31.

[6] Order – ECF No. 43.

[7] Mots. – ECF Nos. 48 and 53.

## 2. Proposed Settlement

### 2.1   Settlement Class

There are 30,711 class members.[8] The settlement class is defined as follows:

> All persons in the United States and Overseas Military identified on the Settlement Class List, including all individuals who were sent notification by Artech that their Personal Information may have been accessible during the Cyber Security Event. Excluded from the Settlement Class are (i) Defendant's trustees, administrators, and attorneys; (ii) all Settlement Class Members who timely and validly request exclusion from and opt-out of the Settlement Class; (iii) the Magistrate Judge to whom the action is assigned and any member of the Magistrate Judge's staff or immediate family members; (iv) any members or employees of defense counsel; and (v) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Cyber Security Event or who pleads nolo contendere to any such charge.[9]

### 2.2   Settlement Benefits

The settlement provides for monetary and injunctive relief and the administration of a credit monitoring and identity-theft protection program funded by Artech.

#### 2.2.1   Settlement Amount and Allocation

There is no aggregate cap on the amounts paid to the settlement class. Individual class members may submit a claim for reimbursement of out-of-pocket expenses up to $80 (for tier one compensation) or $10,000 (for tier two).

Tier one compensation is available to class members who, as of the time they submit their claim form, do not submit evidence that they experienced identity theft, fraud, or misuse of their information as a "fairly traceable" result of the cyber security event. Tier one compensation entitles class members to receive compensation for up to three hours of lost time at a rate of $26.67 per hour (not to exceed $80) if documentation is provided showing the time was spent on addressing the cyber security event. It does not include time spent submitting claim forms.[10]

---

[8] Federman Decl. – ECF No. 36-2 at 6 (¶ 19).

[9] Settlement Agreement – ECF No. 53-2 at 6 (¶ 31).

[10] *Id*. at 7 (¶ 39).

United States District Court
Northern District of California

Tier two compensation is available (in addition to tier one compensation) to class members who demonstrate they have suffered injury that is "fairly traceable" to the cyber security event, and who provide to the settlement administrator evidence of out-of-pocket expenses related to the event (not to exceed $10,000). The submitted evidence must prove the following:

> a. The loss is an actual, documented, and unreimbursed monetary loss as shown by (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Participating Settlement Class Member that documents the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

> b. The loss was more-likely-than-not caused by identity theft or other fraud or misuse of their Personal Information fairly traceable to the Cyber Security Event.

> c. The loss occurred after January 5, 2020.

> d. The Settlement Class Member made reasonable efforts to avoid or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.[11]

Out-of-pocket expenses are defined as follows:

> Documented out-of-pocket costs or expenditures that a Participating Settlement Class Member actually incurred between January 5, 2020, and the Notice Deadline that are fairly traceable to the Cyber Security Event, and that have not already been reimbursed by a third party. Out-of-Pocket Losses may include, without limitation: costs associated with credit monitoring or identity theft insurance purchased directly by the claimant, provided that the product was purchased primarily as a result of the Cyber Security Event; costs associated with requesting a credit report, provided that the claimant requested the report primarily as a result of the Cyber Security Event; costs associated with a credit freeze, provided that the claimant requested the freeze primarily as a result of the Cyber Security Event; costs associated with cancelling a payment card and/or obtaining a replacement payment card, provided that the claimant's request for the cancellation and/or replacement was primarily the result of the Cyber Security Event; costs associated with closing a bank account and/or opening a new bank account, provided that the claimant's request to close and/or open a bank account was primarily the result of the Cyber Security Event; postage, long-distance phone charges, express mail and other incidental expenses, provided that the claimant provides documentation of the charges and that they were fairly traceable to the Cyber Security Event; overdraft and/or overdraft protection fees, provided that the fees were incurred as a result of the Cyber Security Event; late and/or missed payment fees and/or charges,

---

[11] *Id.* at 7–8 (¶ 40).

United States District Court
Northern District of California

provided that the fees and/or charges were incurred as a result of the Cyber Security Event; the increase in interest on credit cards or other loans caused by a late or missed payment that was a result of the Cyber Security Event; and damage to credit and costs associated with a decreased credit score if fairly traceable to the Cyber Security Event.[12]

Settlement checks will be mailed as soon as practicable after the allocation and distribution of funds are calculated by the settlement administrator. The checks are valid for 90 days. Funds from checks that expire or are returned as undeliverable will be reissued, and the reissued checks are valid for 60 days.[13]

### 2.2.2   Injunctive Relief

Artech will adopt or continue the following business practices for three years following the Effective Date:

a. Artech has conducted baseline penetration testing through a well-established third- party IT security vendor, and will continue to conduct substantially equivalent penetration testing at least annually. Defendant has included sufficient funds in its IT security budget to accomplish annual penetration testing as outlined in this subparagraph for 2021, and will reauthorize sufficient funds in its IT budget for each subsequent year through 2024 to utilize the same or any comparably-priced improved testing technology as may be available.

b. Artech shall continue to ensure that anti-malware software resides on all its servers, and that its VPN appliance is updated as soon as practicable after security updates become available, but in no instance less often than monthly.

c. Artech is implementing a company-wide encryption protocol wherein all Personal Information is segregated by its employees and encrypted daily.

d. Artech is testing its IT security for NIST compliance, and has achieved compliance with many NIST requirements, with the remainder to be addressed through SIEM software. Defendant will provide a declaration or certification of such compliance on or before December 21, 2022.

e. Artech is currently evaluating several Security Information and Event Management ("SIEM") software options, and shall deploy SIEM software on or before December 31, 2022.

f. Artech currently provides IT security and Personal Information training to all of its personnel during onboarding, and on a quarterly basis thereafter, which will continue. This training includes directions about how to handle suspicious communications and documents and encourages personnel to report any concerns about Artech's information security systems.

---

[12] *Id*. at 4–5 (¶ 22).

[13] *Id*. at 9 (¶¶ 44–47).

g. Artech has developed and implemented a formal written Personal Information policy, which it will continue to maintain with appropriate updates.

h. Artech is developing a suite of testing and auditing tools through a third-party vendor designed to locate Personal Information located outside Artech's encrypted environment, which will be implemented on or before December 31, 2021. Artech shall provide to the Court a certification from its third-party vendor that all Personal Information located during the auditing process has been either destroyed or moved to Artech's encrypted environment.

i. Artech shall continue to provide employees and former employees a means requesting their Social Security numbers and dates of birth be deleted after such information is no longer needed to fulfill Artech's corporate mission, and will delete such information upon request.[14]

### 2.2.3   Credit Monitoring and Identity Theft Protection Program

All class members have three months following the Final Approval hearing to request access or extension of their access to credit monitoring and identity protection services provided by Kroll and paid for by Artech. The monitoring and protection period will last for three years, starting on the date of each class member's enrollment or the Claims deadline, whichever is later.[15]

### 2.3   Release

The releases are, in short, a release of all class claims under federal or state law for all claims that were pleaded or could have been pleaded under the facts alleged in the complaint, and a general release by the named plaintiffs.[16]

### 2.4   Administration

The court previously approved KCC Class Action Services to administer the settlement in accordance with the procedures in the Settlement Agreement. It complied with the procedures.[17] On November 24, 2021, it mailed the notices to the 30,711 class members informing them of the lawsuit, the settlement, and their right to opt out or object to its terms. 166 were returned as undeliverable. Through other public-source database, KCC identified updated addresses for 16 class members. It also emailed notice to 26,086 class members who had available email addresses. There are no opt-out

---

[14] *Id*. at 10–11 (¶ 51).

[15] *Id*. at 7 (¶ 38).

[16] *Id*. at 15–17 (¶¶ 68–71).

[17] Thomas Suppl. Decl. – ECF No. 57 at 2 (¶ 2).

United States District Court
Northern District of California

request and one objection.[18] On October 28, 2021, KCC mailed the required CAFA notices.[19] As of January 31, 2022, KCC had received 722 timely filed claim forms. Class members have until February 26, 2022, to file a claim.[20]

## ANALYSIS

### 1. Jurisdiction

The court has diversity jurisdiction under CAFA. 28 U.S.C. 1332(d).

### 2. Certification of Settlement Class

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc).

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *In re Hyundai and Kia*, 926 F.3d at 556. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

---

[18] Case Status Report, Ex. C to Thomas Decl. – ECF No. 53-1 at 14; Thomas Suppl. Decl. – ECF No. 57 at 2–3 (¶¶ 4–6).

[19] Thomas Decl. – ECF No. 53-1 at 3–4 (¶¶ 3–5).

[20] Case Status Report, Ex. C to Thomas Decl. – ECF No. 53-1 at 14; Thomas Suppl. Decl. – ECF No. 57 at 3–4 (¶ 9).

United States District Court
Northern District of California

The court finds that the Rule 23(a) factors — numerosity, commonality, typicality, and adequacy — support the certification of the class. It also finds preliminarily under Rule 23(b)(3) (and for settlement purposes only) that the common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, there are 30,711 class members.[21] The class is numerous. *Nelson v. Avon Prods.*, No. 14-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015).

Second, there are questions of law and fact common to the classes that predominate over individual issues. The class members were all affected by the cyber security event. Common questions include whether Artech failed to implement and maintain reasonable and adequate data security practices, whether Artech owed and breached any duty to the class to keep their PII secure, and what damage was caused by the cyber security event.[22] Because the claims arise from Artech's practice before and after the cyber security event, liability can be determined on a class-wide basis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011); *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017).

Third, the claims of the representative plaintiffs are typical of the claims of their respective subclasses. The plaintiffs and all class members allege the same claims based on similar facts. They possess the same interest and suffer from the same injury. *Betorina*, 2017 WL 1278758, at *4.

Fourth, the plaintiffs fairly and adequately protect the interests of their classes. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiffs and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia*, 926 F.3d at 566 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The factors exist here: the named plaintiffs have shared claims and interests with their classes (and no conflicts of interest) and have retained qualified and competent counsel who have prosecuted the

---

[21] Mot. – ECF No. 53 at 17.

[22] *Id.* at 18.

case vigorously. *Id.*; *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The class members have relatively small monetary claims, and the class action resolves many substantially identical claims efficiently, avoiding a waste of resources, to advance the individual members' interests.

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only.

### 3. Approval of Settlement

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *In re Hyundai and Kia*, 926 F.3d at 556. A court may approve a proposed class-action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class-action status throughout trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding; [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the class members to the proposed settlement." *Id.* at 1026 (cleaned up).

When parties "negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt.*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). "Specifically, such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* at 1049 (cleaned up).

United States District Court
Northern District of California

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that it is free of collusion and approval is appropriate. Overall, the settlement appears fair. The settlement agreement was the result of an adversarial, non-collusive, and arms-length negotiation process.[23] It provides good value, given the risks of litigation, the parties' disputes about damages, and the value of money to the plaintiffs now. As discussed above, the parties reached the settlement only after obtaining discovery and conducting a robust damages assessment.[24] The court continues to see the settlement as reasonable and fair, especially given that the response rate is relatively high, and there are no opt-outs and only one objection. (The objector has not opted out of the settlement.) A "relatively small number" of objections is "an indication of a settlement's fairness." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001); *cf. Staton*, 327 F.3d at 959 (court should consider "reaction of the class members to the proposed settlement"); *Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002, at *18–19 (N.D. Cal. June 27, 2014). The objector, who is proceeding pro se, says only that the settlement is not fair or reasonable.[25] The objection does not "state with specificity the grounds for the objection" or give any reasons why the settlement is unfair. Fed. R. Civ. P. 23(e)(5)(A).

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently fair and approves the settlement.

### 4. Class Representatives, Class Counsel, and Claims Administrator

The court previously appointed Brigid Poling and Dwight Jenkins as the class representatives for their respective classes. They have claims that are typical of the members of the class generally, and they are adequate representatives of the class members.

---

[23] Federman Decl. – ECF No. 36-2 at 4–5 (¶¶ 12, 15–16).

[24] *Id*. at 7–9 (¶¶ 24–33).

[25] Howard Obj. – ECF No. 52.

The court also appointed Federman & Sherwood as counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). They have the requisite qualifications, experience, and expertise in prosecuting class actions.

### 5.  Class Notice

The class administrator provided notice to the members of the class in the form that the court approved previously. The notice met the legal prerequisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process and complied with the court's order regarding court notice. The form of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[26]

### 6.  Service Awards

The settlement proposes a service award to the class representatives of $ 2,500 each.[27] The court approves it.

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . .

---

[26] Settlement Notice, Ex. 3 to Mot. – ECF No. 36-3 at 2−6.

[27] Mot. – ECF No. 53 at 28.

United States District Court
Northern District of California

and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice. . . ." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164; c*f. Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases recognize that in this district, a $5,000 award is presumptively reasonable).

The class representatives have been active in this litigation, helping to achieve recoveries for the class.[28] Under the circumstances, $2,500 is justified. *See, e.g., Bellinghausen*, 306 F.R.D. at 266.

### 7.  Compliance with Class Action Fairness Act

Notice of the settlement showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, was provided to the appropriate federal and state officials on January 8, 2021.[29] The court's final approval hearing is more than 90 days after service as required by 28 U.S.C. § 1715(d).

### 8.  Attorney's Fees and Costs

The plaintiff's counsel asks for $350,000 in attorney's fees (an amount that includes the two $2,500 service awards and $16,041.95 in costs).[30] The court awards it.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

---

[28] Federman Decl. ECF No. 36-2 at 7 (¶ 24).

[29] Ex. B to Thomas Decl. – ECF No. 53-1.

[30] Mot. – ECF No. 48 at 9, 20.

1      Fee provisions in class-action settlements must be reasonable. *In re Bluetooth.*, 654 F.3d at

2   941. The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at

3   942–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys
> turns adversarial at the fee-setting stage, courts have stressed that when awarding
> attorneys' fees from a common fund, the district court must assume the role of
> fiduciary for the class plaintiffs. Accordingly, fee applications must be closely
> scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

7   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up).

8      When counsel recovers a common fund that confers a "substantial benefit" on a class of

9   beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v.*

10  *Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts

11  may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*;

12  *Hanlon*, 150 F.3d at 1029.

13     Where the settlement involves a common fund, courts typically award attorney's fees based on

14  a percentage of the settlement fund. The Ninth Circuit has established a "benchmark" that fees

15  should equal twenty-five percent of the settlement, although courts diverge from the benchmark

16  based on factors that include "the results obtained, risk undertaken by counsel, complexity of the

17  issues, length of the professional relationship, the market rate, and awards in similar cases."

18  *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar.

19  25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming thirty-three-

20  percent fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

21     Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

22  benefits being made available to class members rather than the actual amount that is ultimately

23  claimed. *Young v. Polo Retail, LLC*, No. C-02-4547-VRW, 2007 WL 951821, at *8 (N.D. Cal.

24  Mar. 28, 2007) ("district court abused its discretion in basing attorney fee award on actual

25  distribution to class" instead of amount being made available) (citing *Williams v. MGM-Pathe*

26  *Commc'ns Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997)).

27     If the court applies the percentage method, it then typically calculates the lodestar as a "cross-

28  check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.*, No.

1   CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano*

2   *v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters., Inc.*, 111 Cal. App. 3d 215,

3   226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably

4   expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc*., 82 Cal. App. 4th

5   19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by

6   applying a positive or negative "multiplier to take into account a variety of other factors, including

7   the quality of the representation, the novelty and complexity of the issues, the results obtained, and

8   the contingent risk presented." *Id*.; *accord Laffitte v. Robart Half Internet, Inc*., 1 Cal. 5th 480,

9   503–06 (2016) (holding, under California law, that "the percentage method to calculate

10  [attorney's] fee in a common fund case" is appropriate and the trial court has "discretion to

11  conduct a lodestar cross-check on a percentage fee").

12        Based on counsel's submissions, the fee award is appropriate, given their lodestar submissions,

13  the lack of objections to the settlement, and counsel's litigating the case on a contingency basis.[31]

14  The billing rates are normal and customary (and thus reasonable) for lawyers of comparable

15  experience doing similar work.[32] *Cuviello v. Feld Entm't, Inc*., No. 13-cv-04951-BLF, 2015 WL

16  154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in setting the reasonable

17  hourly rates used in the lodestar calculation"); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001)

18  (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77

19  (9th Cir. 2020). Counsel provided billing records justifying the hours worked in the case. The

20  modest multiplier falls within the range of multipliers that courts approve. *Vizcaino*, 290 F.3d at

21  1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when

22  the lodestar method is applied").

23        The court awards the requested $350,000.[33]

24

25

26

---

27   [31] Federman Decl. – ECF No. 48-1.

     [32] *Id*. at 5 (¶¶ 27–28, 31).

28   [33] Mot. – ECF No. 48 at 29. (Class Counsel is seeking less than 25%.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

The court (1) certifies the class for settlement purposes only, (2) approves the settlement and authorizes the distribution of funds set forth above, (3) confirms the appointments of the class representative, class counsel, and KCC Class Action Services, (4) approves $350,000 in fees, costs, and the service awards, and (5) orders the parties and KCC to carry out their obligations in the settlement agreement. In addition, the court adopt paragraphs 15 to 22, and 26 in the proposed order at ECF No. 58 by this reference.[34]

The parties are reminded to file the final accounting in accordance with the district's procedural guidance for class actions.

This disposes of ECF Nos. 48 and 53.

**IT IS SO ORDERED.**

Dated: February 10, 2022

LAUREL BEELER
United States Magistrate Judge

---

[34] Proposed Order – ECF No. 58 at 6–9 (¶¶ 15–22); 10–11 (¶ 26).

ORDER – No. 20-cv-07630-LB                    15